IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-22002-CIV-ALTONAGA-REID

AMANDA RAMIREZ,

   Plaintiff,

v.

SHEIN US SERVICES, LLC

   Defendant.
_____/

**DEFENDANT'S MOTION TO COMPEL ARBITRATION AND
DISMISS OR, IN THE ALTERNATIVE, TO STAY IN FAVOR OF ARBITRATION**

Pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, Defendant SHEIN US SERVICES, LLC ("SHEIN") moves to compel arbitration of Plaintiff Amanda Ramirez's ("Plaintiff") claims and dismiss the pending action and submits the following memorandum of law in support of its motion.

**INTRODUCTION**

SHEIN is an online fashion and lifestyle retailer. Customers of SHEIN may voluntarily enroll in SHEIN's text messaging program, wherein SHEIN sends text messages to consenting customers regarding promotions, updates, and other information from or on behalf of SHEIN. Customers must affirmatively and expressly enroll in the text messaging program. Participation in the text messaging program is not required to purchase any products from SHEIN or otherwise use the SHEIN website or mobile applications.

Plaintiff claims that she received text messages from SHEIN on April 21, 2024, April 28, 2024, May 5, 2024, and May 12, 2024. Compl. ¶ 10. She does not dispute that SHEIN had her consent to send the initial message; rather, she claims that "on or about April 21, 2024," she

requested to opt-out of SHEIN text messages by replying "Stop" (the "Stop Request"). *Id.* ¶ 9. Plaintiff's claims stem from three text messages she alleges SHEIN sent after the Stop Request.

Based on these three alleged post-opt-out text messages, Plaintiff filed this action on behalf of a putative class claiming through conclusory allegations that SHEIN violated the federal Telephone Consumer Protection Act (TCPA) and the Florida Telephone Solicitation Act (FTSA). Even a cursory review of Plaintiff's Complaint reveals deficiencies.[1]

But the Court need not and should not resolve those issues because Plaintiff's filing ignores a critical threshold issue: Ms. Ramirez's agreement to arbitrate this dispute. SHEIN's online terms of use (the "Terms"), which Plaintiff acknowledges and incorporates into her Complaint, require complainants to arbitrate – on an individual basis – the very claims Plaintiff asserts here. Plaintiff agreed to those Terms on multiple occasions – including when she signed into her online SHEIN account and when she made online purchases. As demonstrated below, Plaintiff's claims fall squarely within the scope of the Arbitration Agreement and class action waiver, and she should be compelled to arbitrate them on an individual basis – just as she agreed.

**FACTS**

**I.    Plaintiff Agreed to SHEIN's Terms When She Signed Into Her Account and Made Online Purchases.**

Plaintiff is aware of SHEIN's Terms, which are available on its website. Compl. ¶ 31 (citing https://us.shein.com/Terms-and-Conditions-a-399.html). Plaintiff received notice of and agreed to those Terms on multiple occasions, as shown by SHEIN's records. Declaration of Danny Chi ("Chi Decl.") ¶¶ 5-10.

---

[1] SHEIN plans to file a Motion to Dismiss Complaint and Strike Class Allegations contemporaneously with this Motion. The Court should consider this Motion to Compel first and, if the Court agrees that Plaintiff is required to arbitrate, the Court need not, and should not, reach the merits of the Motion to Dismiss.

For example, when Plaintiff made online purchases through SHEIN's mobile application on January 3, 2024, she "agree[d] to SHEIN's Terms and Conditions and Privacy Policy":



Chi Decl. ¶ 6. As shown above, Plaintiff could not place an order from SHEIN without clicking the "CONTINUE" button. *Id.* Immediately above the "CONTINUE" button is a clear disclosure: "By placing this order you agree to SHEIN's Terms and Conditions and Privacy Policy." *Id.* The "Terms and Conditions" and "Privacy Policy" are prominently displayed, with hyperlinks that can be viewed with one click. *Id.*

Plaintiff also received notice of and agreed to SHEIN's "Terms & Conditions" when she signed into her account on her mobile device – for example, when she did so on March 9, 2022:



Chi Decl. ¶ 8. Plaintiff accepted the updated Terms and Conditions on March 9, 2022. Chi Decl. ¶ 10.

And, again, when Plaintiff signed into her account on her mobile device on January 3, 2024, she received notice of SHEIN's "Terms & Conditions":



Chi Decl. ¶ 5.  As shown above, Plaintiff could not sign into her SHEIN account without clicking a "CONTINUE" button.  *Id.*  And Plaintiff was told, below that "CONTINUE" button, that "[b]y continuing, you agree to our Privacy & Cookie Policy and Terms & Conditions."  *Id.*  The "Terms & Conditions" are prominently displayed as a blue hyperlink and can be viewed with one click.  *Id.* ¶ 7.

**II.     SHEIN's Terms Include an Arbitration Provision.**

SHEIN's Terms govern the use of its website, mobile site, and mobile applications. By using SHEIN's services, a user agrees to its terms, which include a prominent notice that all disputes between the user and SHEIN **"SHALL BE RESOLVED BY BINDING AND FINAL ARBITRATION. IT ALSO CONTAINS A CLASS ACTION AND JURY TRIAL WAIVER."** Chi Decl., Ex. A (Terms), at 1.[2] Users are given an opportunity to opt out of the agreement to arbitrate within 30 days. If, however, a user does not opt out, she **"WILL ONLY BE PERMITTED TO PURSUE DISPUTES OR CLAIMS AND SEEK RELIEF AGAINST [SHEIN] ON AN INDIVIDUAL BASIS, NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION OR PROCEEDING."** *Id.* SHEIN users also agree to **"WAIVE YOUR RIGHT TO PARTICIPATE IN A CLASS ACTION LAWSUIT OR CLASS-WIDE ARBITRATION."** *Id.*

The arbitration agreement is in a conspicuous section entitled "**LEGAL DISPUTES AND ARBITRATION AGREEMENT FOR USERS IN THE UNITED STATES**" (the "Arbitration Agreement"). That section states in part that:

> **13.1 Applicability of Arbitration Agreement.** Subject to the terms of this Arbitration Agreement, you and SHEIN agree that any dispute, claim, disagreement arising out of or relating in any way to your access to or use of the Site, App, Services or the Agreement and prior versions of the Agreement, including claims and disputes that arose between us before the effective date of this Agreement (each a "**Dispute**"), will be resolved by binding arbitration, rather than in court. . . .
>
> **13.2 Waiver of Jury Trial.** YOU AND SHEIN HEREBY WAIVE ANY CONSTITUTIONAL AND STATUTORY RIGHTS TO SUE IN COURT AND HAVE A TRIAL IN FRONT OF A JUDGE OR A JURY. You and SHEIN are instead electing that all Disputes shall be resolved by arbitration under this

---

[2] The Arbitration Agreement and class action waiver provisions quoted above were in effect and have not changed from the time Plaintiff made a purchase in January 2024 through the date this lawsuit was filed. *Compare* Chi Decl. Ex. A at p. 1, ¶¶ 9, 13, *with* Chi Decl. Ex. C at p. 1, ¶¶ 9, 13.

> Arbitration Agreement, except as specified in the paragraph entitled "Applicability of Arbitration Agreement" above. There is no judge or jury in arbitration, and court review of an arbitration award is subject to very limited review. Discovery may be limited in arbitration, and procedures are more streamlined than in court.

Chi Decl., Ex. A (Terms), ¶¶ 13.1, 13.2. The Arbitration Agreement section also contains a clear and conspicuous class action waiver:

> **13.3 Class Action Waiver.** YOU AND SHEIN AGREE THAT, EXCEPT AS SPECIFIED IN THE PARAGRAPH ENTITLED "BATCH ARBITRATION" BELOW, EACH OF US MAY BRING CLAIMS AGAINST THE OTHER ONLY ON AN INDIVIDUAL BASIS AND NOT ON A CLASS, REPRESENTATIVE, OR COLLECTIVE BASIS, AND THE PARTIES HEREBY WAIVE ALL RIGHTS TO HAVE ANY DISPUTE BE BROUGHT, HEARD, ADMINISTERED, RESOLVED, OR ARBITRATED ON A CLASS, COLLECTIVE, REPRESENTATIVE, OR MASS ACTION BASIS. ONLY INDIVIDUAL RELIEF IS AVAILABLE, AND DISPUTES OF MORE THAN ONE CUSTOMER OR USER CANNOT BE ARBITRATED OR CONSOLIDATED WITH THOSE OF ANY OTHER CUSTOMER OR USER.

*Id.* ¶ 13.3. The Arbitration Agreement section clarifies that the Federal Arbitration Act ("FAA") applies and requires that any such arbitration be conducted under the JAMS Arbitration Rules and Procedures:

> **13.5 Arbitration Procedures.** You and SHEIN agree that this Arbitration Agreement affects interstate commerce and that the Federal Arbitration Act, 9 U.S.C. § 1 et seq., applies . . . . The arbitration will be conducted by JAMS. Disputes involving claims, counterclaims, or requests for relief under $250,000, not inclusive of attorneys' fees and interest, shall be subject to JAMS's most current version of the Streamlined Arbitration Rules and procedures available at http://www.jamsadr.com/rules-streamlined-arbitration/; all other Disputes shall be subject to JAMS's most current version of the Comprehensive Arbitration Rules and Procedures, available at http://www.jamsadr.com/rules-comprehensive-arbitration/.

*Id.* ¶ 13.5. The Arbitration Agreement further provides that "[t]he arbitrator shall have exclusive authority to resolve any Dispute, including, without limitation, disputes arising out of or related to the interpretation or application of the Arbitration Agreement, including the enforceability, revocability, scope or validity of the Arbitration Agreement." *Id.* ¶ 13.8.

This Arbitration Agreement and class action waiver are expressly incorporated in all bold, capitalized font into the "**TEXT MESSAGING PROGRAM**" terms including in paragraph 9 of SHEIN's Terms:

> **GENERAL TERMS & DISPUTES.  WITHOUT LIMITATION OUR TEXT MESSAGING PROGRAM IS SUBJECT TO THESE COMPLETE TERMS, WHICH CONTAIN PROVISIONS THAT GOVERN HOW CLAIMS YOU AND WE HAVE AGAINST EACH OTHER ARE RESOLVED (SEE LEGAL DISPUTES AND ARBITRATION AGREEMENT SECTION BELOW), INCLUDING AN OBLIGATION TO ARBITRATE DISPUTES, WHICH WILL, SUBJECT TO LIMITED EXCEPTIONS, REQUIRE YOU TO SUBMIT CLAIMS YOU HAVE AGAINST US, INCLUDING WITHOUT LIMITATION, ANY CLAIMS RELATING TO TEXT MESSAGES YOU RECEIVE FROM US, TO BINDING ARBITRATION, UNLESS YOU OPT-OUT IN ACCORDANCE WITH THE ARBITRATION SECTION BELOW.**

*Id.* ¶ 9.

### III. Plaintiff Violated Her Arbitration Agreement By Filing This Putative Class Action in Court.

Plaintiff's claims stem from three text messages she received from SHEIN after she allegedly opted out from SHEIN's text messaging program. *See* Compl. ¶¶ 9, 10, 66-68, 80-82, 89, 90.  SHEIN's text messaging program and Plaintiff's claims related to the program fall squarely within the scope of the Arbitration Agreement.  *See* Decl. Exs. A, C ¶ 9 (text messaging program is subject to Arbitration Agreement).  Irrespective of the merits of Plaintiff's claims (and SHEIN submits there are none), those claims are squarely encompassed by the Arbitration Agreement and class action waiver.  To the extent Plaintiff contends her claims are beyond the scope of the Arbitration Agreement, it is the arbitrator and not the court who is authorized to determine the scope of the Arbitration Agreement, as discussed *infra*, Section II.  Yet, despite Plaintiff's repeated assent to the Arbitration Agreement (and class action waiver), she nevertheless filed this putative class action lawsuit in court.  She should be compelled to arbitrate.

**ARGUMENT**

The FAA reflects a liberal federal policy favoring arbitration, and it requires the rigorous enforcement of arbitration agreements. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) ("[C]ourts must place arbitration agreements on an equal footing with other contracts."). In short, the United States Supreme Court mandates that federal courts are required to "rigorously enforce agreements to arbitrate," *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985), and "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

**I.    The FAA Applies.**

The FAA governs arbitration agreements in contracts involving interstate commerce because the parties conducted their business across state lines. 9 U.S.C. § 2; *Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1146 (11th Cir. 2015). And the FAA's reach is broad indeed, encompassing transactions "affecting commerce." *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 274-77 (1995). Plaintiff alleges she is a resident and citizen of Florida, and SHEIN is a foreign company headquartered outside of Florida. Compl. ¶¶ 6-7. Plaintiff agreed to the Terms and Conditions using the internet and/or mobile application. Use of the internet "is intimately related to interstate commerce." *United States v. Sutcliffe*, 505 F.3d 944, 952 (9th Cir. 2007); *see also Parnell*, 804 F.3d at 1146. The agreement also provides, by its terms, that the agreement to arbitration is governed by the FAA. *See* Chi Decl., Ex. A (Terms), ¶ 13.5 ("You and SHEIN agree that this Arbitration Agreement affects interstate commerce and that the Federal Arbitration Act, 9 U.S.C. § 1 et seq., applies."). It cannot be seriously disputed that the FAA governs the parties' Arbitration Agreement.

## II.     Plaintiff Agreed to Arbitrate Arbitrability.

The FAA requires courts to compel arbitration "in accordance with the terms of the agreement." 9 U.S.C. § 4.  Thus, when parties "clearly and unmistakably" agree to have an arbitrator decide arbitrability, those issues must be referred to the arbitrator.  *Henry Schein Inc. v. Archer & White Sales Inc.*, 139 S. Ct. 524, 529 (2019); *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010) ("An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other.").  And here, the parties did so.

First, the Arbitration Agreement "clearly and unmistakably" delegates gateway arbitrability issues to the arbitrator, both through the plain language of paragraph 13.8 and through the incorporation of the JAMS Streamlined Arbitration Rules and Procedures in paragraph 13.5. Paragraph 13.8 provides that "[t]he arbitrator shall have exclusive authority to resolve any Dispute, including, without limitation, disputes arising out of or related to the interpretation or application of the Arbitration Agreement, including the enforceability, revocability, scope or validity of the Arbitration Agreement."   Chi Decl. Ex. A ¶ 13.8.  Similarly, under Rule 8(b) of the JAMS Streamlined Arbitration Rules and Procedures, "arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator."   JAMS Arbitrators & Arbitration Services, Streamlined Arbitration Rules & Proc. (June 1, 2021), https://www.jamsadr.com/rules-streamlined-arbitration/.

"It is well established in this Circuit that incorporating these rules constitutes clear and unmistakable evidence of an intent to arbitrate questions of arbitrability." *Wright v. Greensky, Inc.*, No. 20-CV-62441, 2021 WL 2414170, at *20 (S.D. Fla. June 14, 2021); *see also Terminix*

*Int'l Co., LP v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332 (11th Cir. 2005) ("By incorporating the AAA Rules, including Rule 8, into their agreement, the parties clearly and unmistakably agreed that the arbitrator should decide whether the arbitration clause is valid."); *Possibility Pictures II, LLC v. Sony Pictures Worldwide Acquisitions, Inc.*, No. 6:16-cv-1351-Orl-41DCI, 2017 WL 3113454, at *4 (M.D. Fla. Jan. 18, 2017) ("[B]y incorporating the JAMS Comprehensive Arbitration Rules and Procedures 'into their agreement, the parties clearly and unmistakably agreed that the arbitrator should decide whether the arbitration clause is valid.'"), *report and recommendation adopted*, No. 6:16-cv1351-Orl-41-DCI, 2017 WL 3113455 (M.D. Fla. Apr. 21, 2017).

Second, Plaintiff assented to these delegation provisions. In her Complaint, Plaintiff acknowledges SHEIN's Terms, which are available on its website. Compl. ¶ 31. Plaintiff received repeated notice of and agreed to these Terms, including the Arbitration Agreement, when she signed into her account and made online purchases. Chi Decl. ¶¶ 5-10. In addition, SHEIN also sent Plaintiff notifications of changes to these Terms via her registered email address. Plaintiff signed into the SHEIN mobile application and made purchases on multiple occasions. Chi Decl. ¶¶ 4, 6 & Ex. B. As shown above, Plaintiff had the opportunity to review the Terms on multiple occasions, including in the form of a hyperlink immediately above the "ACCEPT" button when she signed into the mobile application in March 2022 and immediately above the "CONTINUE" button when she made a purchase in January 2024. *See id.* She could not have made an online purchase in January 2024 without clicking "CONTINUE" and accepting the Terms. *Id.* ¶ 6. And SHEIN's records demonstrate that Plaintiff clicked "ACCEPT" to accept the Terms when she signed into the SHEIN mobile application in March 2022. Chi Decl. ¶ 10.

Courts routinely find hyperlinked terms of service placed in close proximity to a button that a party must click in order to proceed are binding in these circumstances, and the Court should do so here. *See, e.g., Kravets v. Anthropologie, Inc.*, No. 22-CV-60443, 2022 WL 1978712, at *5 (S.D. Fla. June 6, 2022) (consumer bound by arbitration provision where "Text Terms [we]re located directly above the 'GET FREE SHIPPING NOW' button and contain[ed] bold and underlined links to additional terms and conditions"); *Arencibia v. AGA Serv. Co.*, 533 F. Supp. 3d 1180, 1190 (S.D. Fla. 2021) (user "was cautioned that clicking 'Yes, protect my trip for a total of [amount]' would indicate his acceptance to the 36-page Policy accessible via the hyperlink" where the hyperlink was located right below the offer of insurance), *aff'd*, No. 21-11567, 2022 WL 1499693 (11th Cir. May 12, 2022); *Falcon v. TelevisaUnivision Digital, Inc.*, No. 8:23-cv-02340-TPB-UAM, 2024 WL 1492831, at *4 (M.D. Fla. Mar. 29, 2024) (plaintiff had inquiry notice of terms of use where "hyperlinks were included in statements" that users must agree to Terms of Use to continue using the site, "these statements appeared immediately above the buttons that users needed to click" to proceed, and "hyperlinks were printed in a white text that contrasted with both the black background and the orange 'Create account' and 'Subscribe' buttons"); *Derriman v. Mizzen and Main LLC*, No. 8:23-cv-1132-CEH-UAM, 2023 WL 9022723, at *7 (M.D. Fla. Dec. 29, 2023) (consumer received inquiry notice of terms where the "links [we]re underlined, indicating that they are hyperlinks" and "the text was prominently placed on top of the (contrasting) dark blue 'GET 15% OFF' button" and "set off from the text below it in a box of its own"); *Adams v. Lashify, Inc.*, No. 6:23-cv-243-PGB-DCI, 2023 WL 5573822, at 4 (M.D. Fla. Aug. 29, 2023) (consumer bound by terms, including arbitration clause, where, while the hyperlinked text "could have been bolder and larger," the text was sufficiently conspicuous because it was "prominent[ly] [placed] . . . atop and contrasting with the dark 'CHECKOUT'

button"). Plaintiff should be ordered to arbitrate arbitrability, as she clearly and unmistakably agreed to do.

### III. Plaintiff's Class Claims Cannot Proceed.

The Court should dismiss Plaintiff's class claims and order the parties to arbitrate solely on an individual basis. As the Supreme Court held in *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 664 (2010), arbitration "is a matter of consent." Accordingly, courts cannot force parties into class proceedings to which they did not agree. *Id*. Rather, parties "may specify with whom they choose to arbitrate their disputes." *Id*. at 683 (emphasis in original). Stated differently, SHEIN "may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so." *Id*. at 684 (emphasis in original).

Here, SHEIN did not agree to class arbitration; rather, the Arbitration Agreement expressly prohibits class claims. As shown above, the Arbitration Agreement contains a class action waiver, and the Court should enforce it according to its terms. The United States Supreme Court has so held repeatedly. *See, e.g., Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2308-12 (2013) (FAA does not permit courts to invalidate arbitration agreements because they do not permit class arbitration of federal claim); *DIRECTV, Inc. v. Imburgia*, 136 S. Ct. 463, 466-67 (2015) (FAA "pre-empts and invalidates" state law that would make a class action waiver unconscionable in consumer contract of adhesion); *Concepcion*, 563 U.S. at 336, 352 (same). Under settled United States Supreme Court precedent, Plaintiff cannot proceed with her class claims before this Court or in arbitration.

### IV. The Lawsuit Should Be Dismissed – or at the Very Least Stayed – Pending Arbitration of Plaintiff's Individual Claims.

Dismissal of this lawsuit is appropriate. The FAA provides that a district court "shall" stay proceedings pending arbitration upon the motion of a party. *See* 9 U.S.C. § 3. But the language

of § 3 indicates that a stay is mandatory only when a party requests one. *Id.*; *see also Smith v. Spizzirri*, 144 S. Ct. 1173 (2024) (holding "[w]hen a district court finds that a lawsuit involves an arbitrable dispute and a party has requested a stay of the court proceeding pending arbitration, § 3 compels the court to issue a stay"). Therefore, "[a] case in which arbitration has been compelled may be dismissed in the proper circumstances, such as when *all* the issues raised in . . . court must be submitted to arbitration." *Perera v. H & R Block E. Enterprises, Inc.*, 914 F. Supp. 2d 1284, 1290 (S.D. Fla. 2012) (quoting *Olsher Metals Corp. v. Olsher*, No. 01-3212-CIV-JORDAN, 2003 WL 25600635, at *9 (S.D. Fla. Mar. 26, 2003), *aff'd*, 90 F. App'x 383 (11th Cir. 2003)). As shown above, all of Plaintiff's claims are subject to arbitration. And "any judicial review of the arbitration decision concerning these claims will be limited by the provisions of the FAA." *Id.* Accordingly, the Court should dismiss this lawsuit in its entirety – including the putative class claims – so the parties may arbitrate Plaintiff's claims on an individual basis as agreed. At an absolute minimum, however, the Court should stay the lawsuit pending arbitration.

## CONCLUSION

For the foregoing reasons, the Court should order Plaintiff to arbitrate the arbitrability of her claims. Alternatively, the Court should order Plaintiff to arbitrate such claims on an individual basis. Under either scenario, the Court should dismiss this lawsuit in its entirety or, at the very least, stay it during the pendency of the arbitration.

Case 1:24-cv-22002-CMA   Document 13   Entered on FLSD Docket 07/08/2024   Page 15 of 15

- 15 -

Dated: July 8, 2024  */s/ Jamie Zysk Isani*
**HUNTON ANDREWS KURTH LLP**
Jamie Zysk Isani (FBN 728861)
Samuel A. Danon (FBN 892671)
Natalia C. San Juan (FBN 1011430)
333 S.E. 2 Avenue, Suite 2400
Miami, FL 33131
Telephone: (305) 810-2500
Facsimile: (305) 810-2460
jisani@HuntonAK.com
sdanon@HuntonAK.com
nsanjuan@HuntonAK.com

*Counsel for Defendant SHEIN US SERVICES, LLC*

### CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(a)(3)

On July 3-5, 2024, counsel for SHEIN conferred with Plaintiff's counsel via email regarding the relief herein requested. Plaintiff does not agree to the relief requested herein.

*s/Jamie Zysk Isani*
*Jamie Zysk Isani*