**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO: 1:24-cv-22002-ALTONAGA/Reid**

AMANDA RAMIREZ and
HANNA PITA, individually and
on behalf of all others similarly situated,                    **CLASS ACTION**

        Plaintiffs,                                                   **JURY TRIAL DEMANDED**

v.

SHEIN US SERVICES, LLC,

        Defendant.
_____/

**FIRST AMENDED CLASS ACTION COMPLAINT**[1]

Plaintiffs Amanda Ramirez and Hanna Pita bring this class action against Defendant Shein

US Services, LLC, and allege as follows upon personal knowledge as to Plaintiffs and Plaintiffs'

own acts and experiences, and, as to all other matters, upon information and belief, including

investigation conducted by Plaintiffs' attorneys.

**NATURE OF THE ACTION**

1.     This is a putative class action pursuant to the Telephone Consumer Protection Act, 47

U.S.C. §§ 227, *et seq*. (the "TCPA") and the Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. §

501.059.

2.     To promote its goods and services, Defendant engages in unsolicited text messaging

and continues to text message consumers after they have opted out of Defendant's solicitations.

3.     Through this action, Plaintiffs seek statutory damages on behalf of Plaintiffs and

members of the Class, and any other available legal or equitable remedies.

---

[1] Amended as a matter of course pursuant to Federal Rule of Civil Procedure 15(a)(1)(B).

## JURISDICTION AND VENUE

4.      This Court has federal question subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the action arises under the TCPA.

5.      The Court has personal jurisdiction over Defendant and venue is proper in this District because Defendant directs, markets, and provides its business activities to this District, and because Defendant's unauthorized marketing scheme was directed by Defendant to consumers in this District, and because Defendant is incorporated in Florida.

## PARTIES

6.      Plaintiff Ramirez is a natural person entitled to bring this action under the TCPA, and a citizen and resident of Miami-Dade County, Florida.

7.      Plaintiff Pita is a natural person entitled to bring this action under the TCPA, and a citizen and resident of Charlotte, North Carolina.

8.      Defendant is a foreign corporation with its headquarters located in Los Angeles, California.

## FACTS

9.      As detailed below, Plaintiff Ramirez received multiple text message solicitations on her cellular telephone, 786-***-3373, from Defendant.

10.      On or about April 21, 2024, Plaintiff requested to opt-out of Defendant's text messages by replying with a "STOP" instruction as reflected by the following screenshot:



11.     Defendant ignored Plaintiff Ramirez's "STOP" request and continued text messaging Plaintiff, including on or about April 28, 2024, May 5, 2024, and May 12, 2024, as depicted above.

12.     As depicted below, Plaintiff Pita received multiple text message solicitations on her cellular telephone, 704-***-6171, after repeatedly requesting for Defendant to "Stop" text messaging her:



Sat, May 4 at 3:04 PM

[SHEIN] Your Need-To-See Picks
UP TO 90% OFF on the hottest
tops, sets, dresses, denims +
more: https://shein.top/t4rkh5q.
Reply STOP to stop.

Sun, May 5 at 3:45 PM

[SHEIN] 10 HRS LEFT
Get FLASH SALE down to $.49 +
FREE SHIPPING before it slips
away: https://shein.top/ew30lda.
Reply STOP to stop.

Stop

Mon, May 6 at 5:03 PM

[SHEIN] ALL UNDER $9.99
Stay boujee on a budget with
deals that don't mess around! Tap
in: https://shein.top/f9bdfz2.
Reply STOP to stop.

Stop

Wed, May 8 at 7:02 PM

[SHEIN] FREE SHIPPING DAY
Going with these UP TO 70% OFF

5

[SHEIN] FREE SHIPPING DAY
Going with these UP TO 70% OFF
PICKS!  Deals are almost over:
https://shein.top/naqg54a. Reply
STOP to stop.

Stop

Sat, May 11 at 3:03 PM

[SHEIN] 3 CHEERS 4 SALES!
3 FOR $19 SALE!! Discover y2k,
casual, sexy, & glam summer
styles for less: https://shein.top/
lx4gscq. Reply STOP to stop.

STOP

Sun, May 12 at 3:49 PM

[SHEIN] SUPER SALE ENDS
SOON!
FREE SHIPPING & UP TO 90%
OFF! Shop dailydrops &
bestsellers: https://shein.top/
g6ef624. Reply STOP to stop.

Tue, May 14 at 7:03 PM

[SHEIN] BOGO BONANZA
Double up when you BUY 1 & GET

> styles for less: https://shein.top/lx4gscq. Reply STOP to stop.

> **STOP**

**Sun, May 12 at 3:49 PM**

> [SHEIN] SUPER SALE ENDS SOON!
> FREE SHIPPING & UP TO 90% OFF! Shop dailydrops & bestsellers: https://shein.top/g6ef624. Reply STOP to stop.

**Tue, May 14 at 7:03 PM**

> [SHEIN] BOGO BONANZA
> Double up when you BUY 1 & GET 1 for 99% OFF! Grab 2X the new szn style: https://shein.top/81oeubk. Reply STOP to stop.

**Thu, May 16 at 5:31 PM**

> **STOP**

> NETWORK MSG: You replied with the word "stop" which blocks all texts sent from this number. Text back "unstop" or "start" to receive messages again.

13.     Defendant ignored Plaintiff Pita's "stop" requests, including the first one sent on April 29, 2024, and continued text messaging Plaintiff Pita including on or about May 2, 2024, May 4, 2024, May 5, 2024, May 6, 2024, May 8, 2024, May 11, 2024, May 12, 2024, May 14, 2024, and May 16, 2024.

14.     All text messages in question were sent by Defendant to Plaintiffs and the Class Members.

15.     As demonstrated by the above screenshots, the purpose of Defendant's text messages was to solicit the sale of consumer goods and/or services.

16.     As demonstrated by the above screenshots, the purpose of Defendant's text messages was to advertise, promote, and/or market Defendant's property, goods, and/or services.

17.     Defendant's texts were not made for an emergency purpose or to collect on a debt pursuant to 47 U.S.C. § 227(b)(1)(B).

18.     As demonstrated by the above screenshots, Defendant does not honor consumer requests to opt-out of text message solicitations. Indeed, Plaintiffs attempted to opt-out of Defendant's text message solicitations by responding with Defendant's required "stop" instruction, but Defendant continued to text message Plaintiffs.

19.     Given Defendant's use of an automated text messaging system to text message Plaintiffs, Defendant had the ability to immediately stop and opt-out Plaintiffs from future communications, but it refused to do so.  Accordingly, Defendant failed to ensure that requests by Plaintiffs and the Class Members to opt-out of future communications were honored within a reasonable time. Further, it was unreasonable for Defendant to not immediately opt-out Plaintiffs out of future text messages given its ability to automatically do so.

20.     Defendant's refusal to honor Plaintiffs' opt-out instructions demonstrates that Defendant does not maintain an internal do-not-call list as it escalated its text messaging after Plaintiffs' "stop" instructions instead adding Plaintiffs to a do-not-call list.

21.     Defendant's refusal to honor Plaintiffs' opt-out requests demonstrates that Defendant has not instituted procedures for maintaining a list of persons who request not to receive text messages from Defendant. The precise details regarding its lack of requisite policies and procedures are solely within Defendant's knowledge and control.

22.     Defendant's refusal to honor Plaintiffs' opt-out requests demonstrates that Defendant does not provide training to its personnel engaged in telemarketing. The precise details regarding its lack of training are solely within Defendant's knowledge and control.

23.     Defendant's refusal to honor Plaintiffs' opt-out requests demonstrates that Defendant does not maintain a standalone do-not-call list. The precise details regarding its lack of training are solely within Defendant's knowledge and control.

24.     Defendant did not maintain the required procedures for handling and processing opt-out requests prior to the initiation of the violative text messages it sent to Plaintiffs as reflected by the fact that Plaintiffs made repeated opt-out requests and those requests were never processed; they were ignored by Defendant and its employees and Defendant continued to send text messages.

25.     Defendant sent at least two solicitations after Plaintiffs' initial opt-out requests.

26.     Defendant sent Plaintiff Ramirez text message solicitations more than fifteen (15) days after her first "stop" request.

27.     Plaintiff Ramirez was in Florida when she received Defendant's text message solicitations.

28.     Plaintiffs are the regular user of the telephone number that received the above text message solicitations.

29.     Plaintiffs utilize the cellular telephones that received Defendant's texts messages for personal purposes and the number are Plaintiffs' residential telephone lines.

30.     Plaintiffs' cellular telephones are the primary means of reaching Plaintiffs at their residences.

31.     Plaintiffs' cellular telephone numbers were registered on  the National Do-Not-Call list when they received Defendant's text message solicitations.

32.     Upon information and belief, Defendant has access to outbound transmission reports for all text messages sent advertising/promoting its services and goods. These reports show the dates, times, target telephone numbers, and content of each message sent to Plaintiffs and the Class members.

Defendant also has access to text message logs showing Plaintiffs' and the Class members' inbound opt-out requests.

33.    To send the text messages, Defendant used a messaging platform (the "Platform"), which permitted Defendant to transmit blasts of text messages automatically and without any human involvement. The Platform automatically made a series of calls to Plaintiffs' and the Class members' stored telephone numbers with no human involvement after the series of calls were initiated utilizing the Platform. Defendant's use of generic text messages (depicted above) further demonstrates that Defendant utilizes automated dialing systems to mass transmit solicitation texts to consumers.

34.    The Platform has the capacity to select and dial numbers automatically from a list of numbers, which was in fact utilized by Defendant.

35.    The Platform has the capacity to schedule the time and date for future transmission of text messages, which was in fact utilized by Defendant.

36.    The Platform also has an auto-reply function that results in the automatic transmission of text messages.

37.    In fact, on its website, Defendant admits that it utilizes an "automated system for the selection and dialing of telephone numbers" to transmit text message solicitations. https://us.shein.com/Terms-and-Conditions-a-399.html.

38.    The text messages sent to Plaintiffs and the Class Members were sent by Defendant utilizing the "automated system for the selection and dialing of telephone numbers" described on Defendant's website.

39.    Defendant was not required to and did not need to utilize the Platform to send messages to Plaintiffs and the Class members. Instead, Defendant opted to use the Platform to maximize the reach of its text message advertisements at a nominal cost to Defendant.

40.     Defendant would be able to conduct its business operations without sending automated text messages to consumers.

41.     Defendant would be able to send automated text messages to consumers, and in compliance with the FTSA, by securing the proper consent from consumers prior to sending text messages.

42.     Defendant would be able to send text messages to consumers without consent by utilizing a non-automated text messaging system.

43.     Accordingly, it is not impossible for Defendant to comply with the FTSA in the context of transmitting text messages.

44.     The burden and cost to Defendant of securing consent from consumers that complies with the FTSA is nominal.

45.     Compliance with the FTSA will not result in Defendant having to cease its business operations.

46.     Compliance with the FTSA will not result in Defendant having the alter the prices of any goods or services it provides in the marketplace.

47.     Compliance with the FTSA will not force Defendant to seek regulatory approval from the State of Florida before undertaking any type of commercial transaction.

48.     Plaintiffs and the Class members revoked any consent they may have provided Defendant to text message them by responding with "stop" opt-out instructions.

49.     Plaintiffs and the Class members did not request Defendant's text messages, they explicitly asked for Defendant to "stop" sending text solicitations to their cellular telephones.

50.     Defendant's text messages caused Plaintiffs and the Class members harm, including statutory damages, inconvenience, invasion of privacy, aggravation, annoyance, and violation of their statutory privacy rights.

51.     Defendant's refusal to honor opt-out requests demonstrates that Defendant has not implemented a written policy for maintaining a do-not-call list and does not train its personnel engaged in telemarketing on the existence and use of the do-not-call-list.

52.     Plaintiffs and the Class members are informed and believe that Defendant has not instituted procedures for maintaining a list of persons who request not to receive telemarketing calls or text messages.

53.     Plaintiffs and the Class members are informed and believe that Defendant does not have a written policy, available upon demand, for maintaining a do-not-call list.

54.     Plaintiffs and the Class members are informed and believe that Defendant does not train its personnel engaged in any aspect of telemarketing in the existence and use of the do-not-call list.

55.     The details and specific facts regarding Defendant's failure to maintain the required policies and procedures, as well as personnel training, are solely within Defendant's knowledge and possession.

56.     In sum, Plaintiffs asked Defendant to stop text messaging them, Defendant did not keep a list of all those who asked not to texts, and Plaintiffs suffered the injury of receiving many text message solicitations, which would not have happened if Defendant had maintained an internal do-not-call list and abided by it.

## CLASS ALLEGATIONS

### PROPOSED CLASSES

57. Plaintiffs bring this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of Plaintiffs and all others similarly situated.

58. Plaintiffs bring this case on behalf of the Classes defined as follows:

> **TCPA "STOP" Class: All persons within the United States who, within the four years prior to the filing of this lawsuit through the date of class certification, received two or more text messages within any 12-month period, from Defendant, regarding Defendant's goods or services, to said person's residential cellular telephone number, after communicating to Defendant that they did not wish to receive text messages by replying to the messages with a "stop" or similar opt-out instruction.**

> **FTSA "STOP" Class: All persons in Florida who, since July 1, 2021 through the date of class certification, received one or more text messages, from Defendant, regarding Defendant's goods or services, to said person's cellular telephone number, more than fifteen (15) days after communicating to Defendant that they did not wish to receive text messages by replying to the messages with a "stop" or similar opt-out instruction.**

> **FTSA Autodialer Class: All persons in Florida who, since July 1, 2021 through the date of class certification, received one or more text messages, from Defendant utilizing the Platform, regarding Defendant's goods or services, to said person's cellular telephone number, more than fifteen (15) days after communicating to Defendant that they did not wish to receive text messages by replying to the messages with a "stop" or similar opt-out instruction.**

59. Plaintiffs reserve the right to modify the Class definitions as warranted as facts are learned in further investigation and discovery.

60. Defendant and its employees or agents are excluded from the Classes.

### NUMEROSITY

61. Plaintiffs are informed and believe that there are at least 50 individuals that fall within the Class definitions given Defendant's use of robotexts to solicit consumers and refusal to honor stop requests. The members of the Classes, therefore, are believed to be so numerous that joinder of all members is impracticable.

62.     Identification of the Class members is a matter capable of ministerial determination from Defendant's call records.

COMMON QUESTIONS OF LAW AND FACT

63.     There are numerous questions of law and fact common to members of each Class which predominate over any questions affecting only individual members.  Among the questions of law and fact common are:

a.   Whether Defendant sent text messages to Plaintiffs and the Class members;

b.   Whether Defendant continued to send text message solicitations after opt-out requests;

c.   Whether Defendant utilized an autodialer to text message the Class members;

d.   Whether Defendant failed to honor Plaintiffs' and the Class members' opt-out requests;

e.   Whether Defendant implemented the requisite training of personnel under section 64.1200;

f.   Whether Defendant maintains an internal do-not-call list and instructs its employees on how to use the list;

g.   Whether Defendant maintains the required policies and procedures under section 64.1200; and

h.   Whether Defendant is liable for damages, and the amount of such damages.

64.     The common questions in this case are capable of having common answers, and Plaintiffs and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

TYPICALITY

65.     Plaintiffs' claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

### PROTECTING THE INTERESTS OF THE CLASS MEMBERS

66.     Plaintiffs are representatives who will fully and adequately assert and protect the interests of each Class, and has retained competent counsel. Accordingly, Plaintiffs are adequate representatives and will fairly and adequately protect the interests of the Classes.

### PROCEEDING VIA CLASS ACTION IS SUPERIOR AND ADVISABLE

67.     A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Classes is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Classes are in the millions of dollars, the individual damages incurred by each member of the Classes resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Classes could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

68.     The prosecution of separate actions by members of the Classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant.  For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

### COUNT I
### VIOLATION OF 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(d)
### (On Behalf of Plaintiffs and the TCPA "STOP" Class)

69.     Plaintiffs re-allege and incorporate the foregoing allegations set forth in paragraphs 1 through 68 as if fully set forth herein.

70.     In pertinent part, 47 C.F.R. § 64.1200(d) provides:

> No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that

person or entity. The procedures instituted must meet the following minimum standards:

(1) *Written policy*. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) *Training of personnel engaged in telemarketing*. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) *Recording, disclosure of do-not-call requests*. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

71.     Under 47 C.F.R § 64.1200(e), the rules set forth in 47 C.F.R. § 64.1200(d) are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers.

72.     Plaintiffs and the Class Members are residential telephone subscribers who received more than one text message made for purposes of telemarketing or solicitation purposes from Defendant, who has failed to implement the requisite procedures and personnel training as demonstrated by its repeated failure to honor opt-out requests.

73.     Plaintiffs and the Class members made requests to Defendant not to receive texts from Defendant.

74.     Plaintiffs and the Class Members revoked any consent they may have provided Defendant by responding with "stop" or similar opt-out instructions.

75.     Defendant continued to text message Plaintiffs and the Class Members to harass them into making purchases from Defendant.

76.     Defendant failed to honor Plaintiffs' and the Class members' opt-out requests.

77.     Defendant's refusal to honor opt-out requests demonstrates Defendant's failure to implement a written policy for maintaining a do-not-call list and to train its personnel engaged in telemarketing on the existence and use of the do-not-call-list.

78.     Plaintiffs and the Class members are informed and believe that Defendant has not instituted procedures for maintaining a list of persons who request not to receive telemarketing calls or text messages.

79.     Plaintiffs and the Class members are informed and believe that Defendant does not have a written policy, available upon demand, for maintaining a do-not-call list.

80.     Plaintiffs and the Class members are informed and believe that Defendant does not train its personnel engaged in any aspect of telemarketing in the existence and use of the do-not-call list.

81.     The details and specific facts regarding Defendant's failure to maintain the required policies and procedures, as well as personnel training, are solely within Defendant's knowledge and possession.

82.     Defendant has violated 47 C.F.R. § 64.1200(d) by failing to honor opt-out requests, failing to maintain the required policies and procedures, and failing to train its personnel engaged in telemarketing.

83.     Pursuant to section 227(c)(5) of the TCPA, Plaintiff and the Class members are entitled to an award of $500.00 in statutory damages, for each and every negligent violation.

## COUNT II
## <u>VIOLATION OF FLA. STAT. § 501.059(5)</u>
### (On Behalf of Plaintiff Ramirez and the FTSA "STOP" Class)

84.     Plaintiff Ramirez re-alleges and incorporates the allegations set forth in paragraphs 1 through 68 as if fully set forth herein.

85.     In pertinent part, the FTSA provides:

> A telephone solicitor or other person may not initiate an outbound telephone call, text message, or voicemail transmission to a consumer, business, or donor or potential donor who has previously communicated to the telephone solicitor or other person that he or she does not wish to receive an outbound telephone call, text message, or voicemail transmission:
>
>   (a)   Made by or on behalf of the seller whose goods or services are being offered; or
>
>   (b)   Made on behalf of a charitable organization for which a charitable contribution is being solicited.

Fla. Stat. § 501.059(5).

86.     "'Telephone solicitor' means a natural person, firm, organization, partnership, association, or corporation, or a subsidiary or affiliate thereof, doing business in this state, who makes or causes to be made a telephonic sales call, including, but not limited to, calls made by use of automated dialing or recorded message devices." Fla. Stat. § 501.059(1)(i).

87.     Defendant is a telephone solicitor as defined under the FTSA.

88.     Plaintiff Ramirez and the Class Members are consumers who received one or more text messages regarding Defendant's goods and services after they communicated to Defendant that they did not wish to receive Defendant's text messages.

89.     Plaintiff Ramirez and the Class members made requests to Defendant not to receive texts from Defendant.

90.     Defendant continued to text message Plaintiff Ramirez and the Class Members to harass them into making purchases from Defendant.

91.     Defendant failed to honor Plaintiff Ramirez's and the Class members' opt-out requests.

18

92.     As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation.

93.     Plaintiff Ramirez requests for this Court to enter an Order granting the relief outlined in the Prayer for Relief below.

**COUNT III**
**VIOLATION OF FLA. STAT. § 501.059(8)(a)**
**(On Behalf of Plaintiff Ramirez and the FTSA Autodialer Class)**

94.     Plaintiff Ramirez re-alleges and incorporates the allegations set forth in paragraphs 1 through 68 as if fully set forth herein.

95.     It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

96.     A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

97.     Plaintiff Ramirez and the Class members revoked any consent they may have provided Defendant by responding with a "stop" or similar opt-out instruction.

98.     In violation of the FTSA, Defendant made and/or knowingly allowed telephonic sales calls (texts) to be made to Plaintiff Ramirez and the Class members without Plaintiff Ramirez's and the Class members' prior express written consent.

19

99.     Defendant made and/or knowingly allowed the telephonic sales calls to Plaintiff Ramirez and the Class members to be made utilizing an automated system for the selection and dialing of telephone numbers.

100.    As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff Ramirez and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation.

101.    Plaintiff requests for this Court to enter an Order granting the relief outlined in the Prayer for Relief below.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs Ramirez and Pita, individually and on behalf of the Classes, pray for the following relief:

a) An order certifying this case as a class action on behalf of the Classes as defined above, and appointing Plaintiffs as the representatives of the Classes and Plaintiffs' counsel as Class Counsel;

a) An award of statutory damages for Plaintiffs and each member of the Classes as applicable under the TCPA and FTSA;

b) An order declaring that Defendant's actions, as set out above, violate the TCPA and FTSA;

c) Such further and other relief as the Court deems necessary.

## **JURY DEMAND**

Plaintiff hereby demand a trial by jury.

Dated: July 10, 2024

**HIRALDO P.A.**

*/s/ Manuel S. Hiraldo*
Manuel S. Hiraldo, Esq.
Florida Bar No. 030380
401 E. Las Olas Boulevard
Suite 1400
Ft. Lauderdale, Florida 33301
Email: mhiraldo@hiraldolaw.com
Telephone: 954.400.4713