IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-22002-CIV-ALTONAGA-REID

AMANDA RAMIREZ and
HANNA PITA,

   Plaintiffs,

v.

SHEIN US SERVICES, LLC,

   Defendant.
_____/

**DEFENDANT'S MOTION TO COMPEL ARBITRATION
AND STAY CASE IN FAVOR OF ARBITRATION**

Pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, Defendant SHEIN US SERVICES, LLC ("SHEIN") moves to compel arbitration of the claims of Plaintiffs Amanda Ramirez ("Ms. Ramirez") and Hanna Pita ("Ms. Pita," and collectively "Plaintiffs") and stay this action pending arbitration and submits the following memorandum of law in support of its motion.

SHEIN maintains that the First Amended Complaint fails to state a claim, including for the reasons set forth in SHEIN's Motion to Dismiss Complaint and to Strike Class Action Allegations [ECF No. 14]. In addition, the Court lacks personal jurisdiction over the claims of newly added Plaintiff Hanna Pita, a North Carolina resident whose claims bear no connection to Florida. In view, however, of the Court's Order [ECF No. 17] stating that if Defendant moves to compel arbitration, it "shall not answer or respond to the First Amended Class Action Complaint," SHEIN is not briefing those issues now but preserves those defenses in the event arbitration is denied.[1]

---

[1] Although courts often decide issues of personal jurisdiction first, a district court may "bypass questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant." *Baxter v. Miscavige*, 8:22-cv-986-TPB-JSS, 2023

## INTRODUCTION

SHEIN is an online fashion and lifestyle retailer. Customers of SHEIN may voluntarily enroll in SHEIN's text messaging program, wherein SHEIN sends text messages to consenting customers regarding promotions, updates, and other information from or on behalf of SHEIN. Customers must affirmatively and expressly enroll in the text messaging program. Participation in the text messaging program is not required to purchase any products from SHEIN or otherwise use the SHEIN website or mobile applications.

Ms. Ramirez claims that she received text messages from SHEIN on April 21, 2024, and three times thereafter. Amended Complaint ("Compl.") ¶ 10. She does not dispute that SHEIN had her consent to send the initial message; rather, she claims that "on or about April 21, 2024," she requested to opt-out of SHEIN text messages by replying "Stop" (the "Stop Request"). *Id.* ¶ 10. Ms. Ramirez's claims stem from the three text messages she alleges SHEIN sent *after* the Stop Request.

Similarly, Ms. Pita claims that she received text messages from SHEIN on April 29, 2024, and several times thereafter within the next few weeks. *Id.* ¶ 12. She does not dispute that SHEIN had her consent to send the initial message either; rather, she claims that on April 29, 2024, she requested to opt-out of SHEIN text messages by sending SHEIN a Stop Request. *Id.* ¶ 13. Ms. Pita's claims stem from the text messages she alleges SHEIN sent *after* the Stop Request.

Based on these alleged post-opt-out text messages, Plaintiffs filed the First Amended Complaint on behalf of a putative class claiming through conclusory allegations that SHEIN violated the federal Telephone Consumer Protection Act (TCPA) and the Florida Telephone

---

WL 2743144, at *2 (M.D. Fla. Mar. 31, 2023) (citation omitted) (granting motion to compel arbitration without deciding personal jurisdictional issue).

- 3 -

Solicitation Act (FTSA).  Even a cursory review of Plaintiffs' Complaint reveals deficiencies.

But the Court need not and should not resolve those issues because Plaintiffs' filing ignores a critical threshold issue: each Plaintiff's agreement to arbitrate this dispute.  SHEIN's online terms of use (the "Terms"), which Plaintiffs acknowledge and incorporate into their Complaint, require complainants to arbitrate – on an individual basis – the very claims Plaintiffs assert here.  Plaintiffs agreed to those Terms on multiple occasions – including when they signed into their online SHEIN accounts and when they made online purchases.  As demonstrated below, Plaintiffs' claims fall squarely within the scope of the Arbitration Agreement and class action waiver, and they should be compelled to arbitrate them on an individual basis – just as they agreed.

**FACTS**

**I.      Plaintiffs Agreed to SHEIN's Terms When They Signed Into Their Accounts and Made Online Purchases.**

Plaintiffs are aware of SHEIN's Terms, which are available on its website.  Compl. ¶ 37 (citing https://us.shein.com/Terms-and-Conditions-a-399.html).  Plaintiffs received notice of and agreed to those Terms on multiple occasions, as shown by SHEIN's records.  Declaration of Danny Chi ("Chi Decl.") ¶¶ 5-11.

For example, when Ms. Ramirez and Ms. Pita made online purchases through SHEIN's mobile application on January 3, 2024 and April 7, 2024, respectively, each Plaintiff "agree[d] to SHEIN's Terms and Conditions and Privacy Policy":



Chi Decl. ¶ 7. As shown above, neither Plaintiff could place an order from SHEIN without clicking the "CONTINUE" button. *Id.* Immediately above the "CONTINUE" button is a clear disclosure: "By placing this order you agree to SHEIN's Terms and Conditions and Privacy Policy." *Id.* The

"Terms and Conditions" and "Privacy Policy" are prominently displayed, with hyperlinks that can be viewed with one click.  *Id.* ¶¶ 7, 8.

Each Plaintiff also received notice of and agreed to SHEIN's "Terms & Conditions" when she signed into her account on her mobile device – for example, when Ms. Ramirez did so on March 9, 2022, and when Ms. Pita did so on September 1, 2022:



Chi Decl. ¶ 9.  Ms. Ramirez accepted the updated Terms and Conditions on March 9, 2022, and Ms. Pita did so on September 1, 2022.  Chi Decl. ¶ 11.

And, again, when Ms. Ramirez signed into her account on her mobile device before making a purchase on January 3, 2024 and Ms. Pita signed into her account on her mobile device before making a purchase on April 7, 2024, each Plaintiff received notice of SHEIN's "Terms & Conditions":

[SHEIN US mobile sign-in screen showing promotional banners (Get 20% Off First Order, Free Shipping First Order, Free Returns *Conditions Apply), a "Mobile number or email address" input field, a "CONTINUE" button, "Or join with" options (Continue with Google, Continue with Facebook, Continue with Apple), a "United States" location selector, and the disclaimer: "By continuing, you agree to our Privacy & Cookie Policy and Terms & Conditions."]

Chi Decl. ¶ 6.  As shown above, neither Ms. Ramirez nor Ms. Pita could sign into her SHEIN account without clicking a "CONTINUE" button.  *Id.*  And each Plaintiff was told, below that "CONTINUE" button, that "[b]y continuing, you agree to our Privacy & Cookie Policy and Terms & Conditions."  *Id.*  The "Terms & Conditions" are prominently displayed as a blue hyperlink and can be viewed with one click.  *Id.* ¶¶ 6, 8.

**II.      SHEIN's Terms Include an Arbitration Provision.**

SHEIN's Terms govern the use of its website, mobile site, and mobile applications.  By using SHEIN's services, a user agrees to its terms, which include a prominent notice that all

disputes between the user and SHEIN **"SHALL BE RESOLVED BY BINDING AND FINAL ARBITRATION.  IT ALSO CONTAINS A CLASS ACTION AND JURY TRIAL WAIVER."** Chi Decl., Ex. A (Terms), at 1.[2]  Users are given an opportunity to opt out of the agreement to arbitrate within 30 days.  If, however, a user does not opt out, she **"WILL ONLY BE PERMITTED TO PURSUE DISPUTES OR CLAIMS AND SEEK RELIEF AGAINST [SHEIN] ON AN INDIVIDUAL BASIS, NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION OR PROCEEDING."** *Id.*  SHEIN users also agree to **"WAIVE YOUR RIGHT TO PARTICIPATE IN A CLASS ACTION LAWSUIT OR CLASS-WIDE ARBITRATION."** *Id.*

The arbitration agreement is in a conspicuous section entitled "**LEGAL DISPUTES AND ARBITRATION AGREEMENT FOR USERS IN THE UNITED STATES**" (the "Arbitration Agreement").  That section states in part that:

> **13.1 Applicability of Arbitration Agreement.**  Subject to the terms of this Arbitration Agreement, you and SHEIN agree that any dispute, claim, disagreement arising out of or relating in any way to your access to or use of the Site, App, Services or the Agreement and prior versions of the Agreement, including claims and disputes that arose between us before the effective date of this Agreement (each a "**Dispute**"), will be resolved by binding arbitration, rather than in court. . . .
>
> **13.2 Waiver of Jury Trial.**  YOU AND SHEIN HEREBY WAIVE ANY CONSTITUTIONAL AND STATUTORY RIGHTS TO SUE IN COURT AND HAVE A TRIAL IN FRONT OF A JUDGE OR A JURY.  You and SHEIN are instead electing that all Disputes shall be resolved by arbitration under this Arbitration Agreement, except as specified in the paragraph entitled "Applicability of Arbitration Agreement" above.  There is no judge or jury in arbitration, and court review of an arbitration award is subject to very limited review.  Discovery may be limited in arbitration, and procedures are more streamlined than in court.

---

[2] The Arbitration Agreement and class action waiver provisions quoted above were in effect and have not changed from the time Ms. Ramirez made a purchase in January 2024 or Ms. Pita made a purchase in April 2024 through the date this lawsuit was filed.  *Compare* Chi Decl. Ex. A at p. 1, ¶¶ 9, 13, *with* Chi Decl. Ex. D at p. 1, ¶¶ 9, 13.

Chi Decl., Ex. A (Terms), ¶¶ 13.1, 13.2.  The Arbitration Agreement section also contains a clear and conspicuous class action waiver:

> **13.3 Class Action Waiver.** YOU AND SHEIN AGREE THAT, EXCEPT AS SPECIFIED IN THE PARAGRAPH ENTITLED "BATCH ARBITRATION" BELOW, EACH OF US MAY BRING CLAIMS AGAINST THE OTHER ONLY ON AN INDIVIDUAL BASIS AND NOT ON A CLASS, REPRESENTATIVE, OR COLLECTIVE BASIS, AND THE PARTIES HEREBY WAIVE ALL RIGHTS TO HAVE ANY DISPUTE BE BROUGHT, HEARD, ADMINISTERED, RESOLVED, OR ARBITRATED ON A CLASS, COLLECTIVE, REPRESENTATIVE, OR MASS ACTION BASIS.  ONLY INDIVIDUAL RELIEF IS AVAILABLE, AND DISPUTES OF MORE THAN ONE CUSTOMER OR USER CANNOT BE ARBITRATED OR CONSOLIDATED WITH THOSE OF ANY OTHER CUSTOMER OR USER.

*Id.* ¶ 13.3.  The Arbitration Agreement section clarifies that the Federal Arbitration Act ("FAA") applies and requires that any such arbitration be conducted under the JAMS Arbitration Rules and Procedures:

> **13.5 Arbitration Procedures.**  You and SHEIN agree that this Arbitration Agreement affects interstate commerce and that the Federal Arbitration Act, 9 U.S.C. § 1 et seq., applies . . . .  The arbitration will be conducted by JAMS.  Disputes involving claims, counterclaims, or requests for relief under $250,000, not inclusive of attorneys' fees and interest, shall be subject to JAMS's most current version of the Streamlined Arbitration Rules and procedures available at http://www.jamsadr.com/rules-streamlined-arbitration/; all other Disputes shall be subject to JAMS's most current version of the Comprehensive Arbitration Rules and Procedures, available at http://www.jamsadr.com/rules-comprehensive-arbitration/.

*Id.* ¶ 13.5.  The Arbitration Agreement further provides that "[t]he arbitrator shall have exclusive authority to resolve any Dispute, including, without limitation, disputes arising out of or related to the interpretation or application of the Arbitration Agreement, including the enforceability, revocability, scope or validity of the Arbitration Agreement."  *Id.* ¶ 13.8.

This Arbitration Agreement and class action waiver are expressly incorporated in all bold, capitalized font into the "**TEXT MESSAGING PROGRAM**" terms including in paragraph 9 of SHEIN's Terms:

> **GENERAL TERMS & DISPUTES. WITHOUT LIMITATION OUR TEXT MESSAGING PROGRAM IS SUBJECT TO THESE COMPLETE TERMS, WHICH CONTAIN PROVISIONS THAT GOVERN HOW CLAIMS YOU AND WE HAVE AGAINST EACH OTHER ARE RESOLVED (SEE LEGAL DISPUTES AND ARBITRATION AGREEMENT SECTION BELOW), INCLUDING AN OBLIGATION TO ARBITRATE DISPUTES, WHICH WILL, SUBJECT TO LIMITED EXCEPTIONS, REQUIRE YOU TO SUBMIT CLAIMS YOU HAVE AGAINST US, INCLUDING WITHOUT LIMITATION, ANY CLAIMS RELATING TO TEXT MESSAGES YOU RECEIVE FROM US, TO BINDING ARBITRATION, UNLESS YOU OPT-OUT IN ACCORDANCE WITH THE ARBITRATION SECTION BELOW.**

*Id.* ¶ 9.

### III. Plaintiffs Violated the Arbitration Agreement by Filing this Putative Class Action in Court.

Plaintiffs' claims stem from text messages they received from SHEIN after they allegedly opted out from SHEIN's text messaging program. *See* Compl. ¶¶ 9-13, 74-76, 88-90, 97, 98. SHEIN's text messaging program and Plaintiffs' claims related to the program fall squarely within the scope of the Arbitration Agreement. *See* Decl. Exs. A, D ¶ 9, Ex. E ¶ 8.1 (text messaging program is subject to Arbitration Agreement). Irrespective of the merits of Plaintiffs' claims (and SHEIN submits there are none), those claims are squarely encompassed by the Arbitration Agreement and class action waiver. To the extent Plaintiffs contend their claims are beyond the scope of the Arbitration Agreement, it is the arbitrator and not the court who is authorized to determine the scope of the Arbitration Agreement, as discussed *infra*, Section II. Yet, despite Plaintiffs' repeated assent to the Arbitration Agreement (and class action waiver), they nevertheless filed this putative class action lawsuit in court. They should be compelled to arbitrate.

### ARGUMENT

The FAA reflects a liberal federal policy favoring arbitration, and it requires the rigorous enforcement of arbitration agreements. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) ("[C]ourts must place arbitration agreements on an equal footing with other contracts.").

In short, the United States Supreme Court mandates that federal courts are required to "rigorously enforce agreements to arbitrate," *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985), and "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

## I.     The FAA Applies.

The FAA governs arbitration agreements in contracts involving interstate commerce because the parties conducted their business across state lines.  9 U.S.C. § 2; *Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1146 (11th Cir. 2015).  And the FAA's reach is broad indeed, encompassing transactions "affecting commerce." *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 274-77 (1995).  Plaintiffs allege that Ms. Ramirez is a resident and citizen of Florida, Ms. Pita is a resident and citizen of North Carolina, and SHEIN is a foreign company headquartered outside of both Florida and North Carolina.[3]  Compl. ¶¶ 6-8.  Plaintiffs agreed to the Terms and Conditions using the internet and/or mobile application.  Use of the internet "is intimately related to interstate commerce." *United States v. Sutcliffe*, 505 F.3d 944, 952 (9th Cir. 2007); *see also Parnell*, 804 F.3d at 1146.  The agreement also provides, by its terms, that the agreement to arbitration is governed by the FAA.  *See* Chi Decl., Ex. A (Terms), ¶ 13.5 ("You and SHEIN agree that this Arbitration Agreement affects interstate commerce and that the Federal Arbitration Act, 9 U.S.C.

---

[3] Plaintiffs allege inconsistently in paragraph 5 that "Defendant is incorporated in Florida."  That allegation is false and is contradicted by a simple search of Florida's Department of State website, of which the Court may take judicial notice.  *See* [https://search.sunbiz.org/Inquiry/CorporationSearch/SearchResults/EntityName/shein%20us%20services/Page1?searchNameOrder=SHEINUSSERVICES](https://search.sunbiz.org/Inquiry/CorporationSearch/SearchResults/EntityName/shein%20us%20services/Page1?searchNameOrder=SHEINUSSERVICES) (showing no record for SHEIN US Services, LLC).  *See, e.g., Am. Marine Tech., Inc. v. World Grp. Yachting, Inc.,* 418 F. Supp. 3d 1075, 1082 (S.D. Fla. 2019) ("[B]ecause the Sunbiz Filing is publicly available on the Florida Department of State's website, at www.sunbiz.org, the Court may take judicial notice of such records.").  SHEIN is a Delaware limited liability company.

§ 1 et seq., applies.).  It cannot be seriously disputed that the FAA governs the parties' Arbitration Agreement.

### II. Plaintiffs Agreed to Arbitrate Arbitrability.

The FAA requires courts to compel arbitration "in accordance with the terms of the agreement." 9 U.S.C. § 4.  Thus, when parties "clearly and unmistakably" agree to have an arbitrator decide arbitrability, those issues must be referred to the arbitrator.  *Henry Schein Inc. v. Archer & White Sales Inc.*, 139 S. Ct. 524, 529 (2019); *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010) ("An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other.").  And here, the parties did so.

First, the Arbitration Agreement "clearly and unmistakably" delegates gateway arbitrability issues to the arbitrator, both through the plain language of paragraph 13.8 and through the incorporation of the JAMS Streamlined Arbitration Rules and Procedures in paragraph 13.5. Paragraph 13.8 provides that "[t]he arbitrator shall have exclusive authority to resolve any Dispute, including, without limitation, disputes arising out of or related to the interpretation or application of the Arbitration Agreement, including the enforceability, revocability, scope or validity of the Arbitration Agreement."  Chi Decl. Ex. A ¶ 13.8.  Similarly, under Rule 8(b) of the JAMS Streamlined Arbitration Rules and Procedures, "arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator."  JAMS Arbitrators & Arbitration Services, Streamlined Arbitration Rules & Proc. (June 1, 2021), https://www.jamsadr.com/rules-streamlined-arbitration/.

"It is well established in this Circuit that incorporating these rules constitutes clear and unmistakable evidence of an intent to arbitrate questions of arbitrability." *Wright v. Greensky, Inc.*, No. 20-CV-62441, 2021 WL 2414170, at *20 (S.D. Fla. June 14, 2021); *see also Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332 (11th Cir. 2005) ("By incorporating the AAA Rules, including Rule 8, into their agreement, the parties clearly and unmistakably agreed that the arbitrator should decide whether the arbitration clause is valid."); *Possibility Pictures II, LLC v. Sony Pictures Worldwide Acquisitions, Inc.*, No. 6:16-cv-1351-Orl-41DCI, 2017 WL 3113454, at *4 (M.D. Fla. Jan. 18, 2017) ("[B]y incorporating the JAMS Comprehensive Arbitration Rules and Procedures 'into their agreement, the parties clearly and unmistakably agreed that the arbitrator should decide whether the arbitration clause is valid.'"), *report and recommendation adopted*, No. 6:16-cv1351-Orl-41-DCI, 2017 WL 3113455 (M.D. Fla. Apr. 21, 2017).

Second, Plaintiffs assented to these delegation provisions. In their Complaint, Plaintiffs acknowledge SHEIN's Terms, which are available on its website. Compl. ¶ 37. Plaintiffs received repeated notice of and agreed to these Terms, including the Arbitration Agreement, when they signed into their accounts and made online purchases. Chi Decl. ¶¶ 5-11. In addition, SHEIN also sent Plaintiffs notifications of changes to these Terms via their registered email addresses. Plaintiffs signed into the SHEIN mobile application and made purchases on multiple occasions. Chi Decl. ¶¶ 4, 6 & Ex. B, C. As shown above, both Plaintiffs had the opportunity to review the Terms on multiple occasions, including in the form of a hyperlink immediately above the "ACCEPT" button when Ms. Ramirez signed into the mobile application on March 9, 2022 and Ms. Pita did so on September 1, 2022, and immediately above the "CONTINUE" button when Ms. Ramirez made a purchase in January 2024 and when Ms. Pita did so in April 2024. *See id.* Neither

Plaintiff could have made an online purchase in January 2024 or April 2024 without clicking "CONTINUE" and accepting the Terms. *Id.* ¶ 7. And SHEIN's records demonstrate that Ms. Ramirez clicked "ACCEPT" to accept the Terms when she signed into the SHEIN mobile application in March 2022, as did Ms. Pita when she signed into the SHEIN mobile application in September 2022. Chi Decl. ¶ 11.

Courts routinely find hyperlinked terms of service placed in close proximity to a button that a party must click in order to proceed are binding in these circumstances, and the Court should do so here. *See, e.g., Kravets v. Anthropologie, Inc.*, No. 22-CV-60443, 2022 WL 1978712, at *5 (S.D. Fla. June 6, 2022) (consumer bound by arbitration provision where "Text Terms [we]re located directly above the 'GET FREE SHIPPING NOW' button and contain[ed] bold and underlined links to additional terms and conditions"); *Arencibia v. AGA Serv. Co.*, 533 F. Supp. 3d 1180, 1190 (S.D. Fla. 2021) (user "was cautioned that clicking 'Yes, protect my trip for a total of [amount]' would indicate his acceptance to the 36-page Policy accessible via the hyperlink" where the hyperlink was located right below the offer of insurance), *aff'd*, No. 21-11567, 2022 WL 1499693 (11th Cir. May 12, 2022); *Falcon v. TelevisaUnivision Digital, Inc.*, No. 8:23-cv-02340-TPB-UAM, 2024 WL 1492831, at *4 (M.D. Fla. Mar. 29, 2024) (plaintiff had inquiry notice of terms of use where "hyperlinks were included in statements" that users must agree to Terms of Use to continue using the site, "these statements appeared immediately above the buttons that users needed to click" to proceed, and "hyperlinks were printed in a white text that contrasted with both the black background and the orange 'Create account' and 'Subscribe' buttons"); *Derriman v. Mizzen and Main LLC*, No. 8:23-cv-1132-CEH-UAM, 2023 WL 9022723, at *7 (M.D. Fla. Dec. 29, 2023) (consumer received inquiry notice of terms where the "links [we]re underlined, indicating that they are hyperlinks" and "the text was prominently placed on top of the

(contrasting) dark blue 'GET 15% OFF' button" and "set off from the text below it in a box of its own"); *Adams v. Lashify, Inc.*, No. 6:23-cv-243-PGB-DCI, 2023 WL 5573822, at 4 (M.D. Fla. Aug. 29, 2023) (consumer bound by terms, including arbitration clause, where, while the hyperlinked text "could have been bolder and larger," the text was sufficiently conspicuous because it was "prominent[ly] [placed] . . . atop and contrasting with the dark 'CHECKOUT' button"); *see also Granados v. Lendingtree LLC*, No. 3:22CV00504MOCDSC, 2023 WL 1481545, at *3 (W.D.N.C. Feb. 2, 2023) ("a reasonable consumer creating an account and submitting a loan search would have been aware of the Terms of Use" where "Defendant included a provision below the 'Create Account' tab stating that the consumer agreed to abide by the Terms of Use" and where "users that submitted consumer loan searches [were required] to click a button accompanied by text stating the user 'consent[s], acknowledge[s] and agree[s]' to Defendant's Terms of Use"), *report and recommendation adopted*, No. 3:22-CV-504-MOC, 2023 WL 2672830 (W.D.N.C. Mar. 28, 2023); *Moreno v. Expedia*, No. 3:18-CV-105, 2018 WL 3059617, at *3 (W.D.N.C. June 20, 2018) ("[b]y selecting the 'Complete Booking' button, Plaintiff entered into a valid arbitration agreement with Defendant" where "[a] hyperlink was included on the webpage to ensure that users could read all applicable policies"); *Bergenstock v. LegalZoom.com, Inc.*, No. 13 CVS 15686, 2015 WL 3866703, at *6 (N.C. Super. June 23, 2015) (consumer bound by terms where, to make a purchase, she "had to click an 'Agree and Place Order' button directly next to a statement that indicated that the clicking of that button would indicate her consent to the Terms" and the statement included "links that would have called up either of the Terms in written form").

      Ms. Ramirez and Ms. Pita should be ordered to arbitrate arbitrability, as they clearly and unmistakably agreed to do.

### III. Plaintiffs' Class Claims Cannot Proceed.

The Court should dismiss Plaintiffs' class claims and order the parties to arbitrate solely on an individual basis. As the Supreme Court held in *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 664 (2010), arbitration "is a matter of consent." Accordingly, courts cannot force parties into class proceedings to which they did not agree. *Id*. Rather, parties "may specify with whom they choose to arbitrate their disputes." *Id*. at 683 (emphasis in original). Stated differently, SHEIN "may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so." *Id*. at 684 (emphasis in original).

Here, SHEIN did not agree to class arbitration; rather, the Arbitration Agreement expressly prohibits class claims. As shown above, the Arbitration Agreement contains a class action waiver, and the Court should enforce it according to its terms. The United States Supreme Court has so held repeatedly. *See, e.g., Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2308-12 (2013) (FAA does not permit courts to invalidate arbitration agreements because they do not permit class arbitration of federal claim); *DIRECTV, Inc. v. Imburgia*, 136 S. Ct. 463, 466-67 (2015) (FAA "pre-empts and invalidates" state law that would make a class action waiver unconscionable in consumer contract of adhesion); *Concepcion*, 563 U.S. at 336, 352 (same). Under settled United States Supreme Court precedent, Plaintiffs cannot proceed with their class claims before this Court or in arbitration.

### IV. The Lawsuit Should Be Stayed Pending Arbitration of Plaintiffs' Individual Claims.

The FAA provides that a district court "shall" stay proceedings pending arbitration upon the motion of a party. *See* 9 U.S.C. § 3. The Supreme Court has recently confirmed that "[w]hen a district court finds that a lawsuit involves an arbitrable dispute and a party has requested a stay of the court proceeding pending arbitration, § 3 compels the court to issue a stay." *Smith v.*

*Spizzirri*, 144 S. Ct. 1173, 1174 (2024). Accordingly, the Court should stay the lawsuit pending arbitration.

## CONCLUSION

For the foregoing reasons, the Court should order Plaintiffs to arbitrate the arbitrability of their claims. Alternatively, the Court should order Plaintiffs to arbitrate their claims on an individual basis. Under either scenario, the Court should stay this case during the pendency of the arbitration.

Dated: July 19, 2024

/s/ *Jamie Zysk Isani*
**HUNTON ANDREWS KURTH LLP**
Jamie Zysk Isani (FBN 728861)
Samuel A. Danon (FBN 892671)
Natalia C. San Juan (FBN 1011430)
333 S.E. 2 Avenue, Suite 2400
Miami, FL 33131
Telephone: (305) 810-2500
Facsimile: (305) 810-2460
jisani@HuntonAK.com
sdanon@HuntonAK.com
nsanjuan@HuntonAK.com

*Counsel for Defendant SHEIN US SERVICES, LLC*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(a)(3)

Pursuant to Local Rule 7.1(a)(3)(A), I hereby certify that counsel for the movant has conferred with all parties who may be affected by the relief sought in this motion in a good faith effort to resolve the issues but has been unable to resolve the issues.

                                                    *s/Jamie Zysk Isani*
                                                      *Jamie Zysk Isani*