IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-22002-CIV-ALTONAGA-REID

AMANDA RAMIREZ and
HANNA PITA,

   Plaintiffs,

v.

SHEIN US SERVICES, LLC,

   Defendant.
_____/

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO**
**COMPEL ARBITRATION AND STAY CASE IN FAVOR OF ARBITRATION**

Plaintiffs' sole argument in their opposition to arbitration [ECF No. 19] ("Opp.") is that the arbitration provisions of SHEIN's terms and conditions ("Terms") constitute a "collateral document" or "collateral agreement." Plaintiffs' argument rests on a baseless mischaracterization of the arbitration provisions that are included *within* SHEIN's Terms.

Plaintiffs' opposition is telling for the arguments it does not make. Plaintiffs do not contest that they received notice of and agreed to SHEIN's Terms on multiple occasions, including when they made online purchases through SHEIN's mobile application and when they signed into their accounts on mobile devices. Nor do Plaintiffs deny that the Terms they accepted contained a prominent disclosure that the Terms included arbitration provisions. Plaintiffs further do not dispute that the agreement to arbitrate clearly and unmistakably delegates gateway arbitrability issues to the arbitrator or that it expressly prohibits class claims.

Absent the ability to challenge any of these issues, Plaintiffs resort to mischaracterizing the agreement to arbitrate, which is an enumerated provision of SHEIN's Terms, as a "collateral

document" in an attempt to exclude it from the Terms to which they clearly agreed. From there, they assert that the agreement to arbitrate must be specifically referenced in conjunction with the hyperlink to the "Terms and Conditions" that was presented to Plaintiffs before they clicked "ACCEPT" or "CONTINUE". None of the cases Plaintiffs cite actually supports that proposition on these facts, however, and any rule requiring an arbitration provision within a contract to be specifically called out would violate the Federal Arbitration Act's requirement that arbitration agreements must be placed on equal footing with other contracts. The Court should reject Plaintiffs' argument and enter an order staying this case and compelling Plaintiffs to arbitrate their claims on an individual basis.

## PLAINTIFFS SHOULD BE COMPELLED TO ARBITRATE

### I.     The Agreement to Arbitrate is Not a Collateral Document.

Contrary to Plaintiffs' misrepresentations, the Arbitration Agreement is a specific enumerated provision within SHEIN's Terms. It is not a collateral document or "stand-alone" agreement, as Plaintiffs contend (Opp. at 5). With just one click of the "Terms and Conditions" hyperlink immediately above the "CONTINUE" button at check out, Chi Decl. [ECF No. 18-1] ¶ 7, and the "ACCEPT" button at sign in, *id.* ¶ 9, or below the "CONTINUE" button at sign in, *id.* ¶ 6, at all relevant times users received prominent notice that all disputes between the user and SHEIN were subject to binding arbitration and a class action waiver. The Terms immediately notified the user that they *contained* arbitration provisions and a class action waiver *within* them:

Home / SHEIN U.S. TERMS OF USE

# SHEIN U.S. TERMS OF USE

IMPORTANT NOTICE FOR RESIDENTS IN THE UNITED STATES ONLY: THIS AGREEMENT AND YOUR USE OF OUR SERVICES IS SUBJECT TO BINDING ARBITRATION AND A WAIVER OF CLASS ACTION RIGHTS AS DETAILED BELOW.

Effective Date: December 30, 2021

*Id.*, Ex. E, at 1.

Home / SHEIN U.S. TERMS OF USE

# SHEIN U.S. TERMS OF USE

Effective Date: March 27th, 2024

Welcome to SHEIN's US web, mobile site and mobile application.

These terms and conditions ( **"Agreement"** or **"Terms"** ) govern your use of the us.shein.com website (the **"Site"** ), related SHEIN mobile application available to US residents (the **"App"** ), any other written, electronic, and oral communications with SHEIN, or any websites, pages, features, or content owned and operated by us (collectively, including the Site and App the **"Services"** ). You must be age 16 or older to use the Services.

BY USING THE SERVICES, YOU AGREE TO THESE TERMS. IF YOU DO NOT AGREE TO THESE TERMS, DO NOT ACCESS OR USE THE SERVICES.

PLEASE BE AWARE THAT THIS AGREEMENT CONTAINS PROVISIONS GOVERNING HOW TO RESOLVE DISPUTES BETWEEN YOU AND SHEIN. AMONG OTHER THINGS, IT INCLUDES AN AGREEMENT TO ARBITRATE WHICH REQUIRES, WITH LIMITED EXCEPTIONS, THAT ALL DISPUTES BETWEEN YOU AND US SHALL BE RESOLVED BY BINDING AND FINAL ARBITRATION. IT ALSO CONTAINS A CLASS ACTION AND JURY TRIAL WAIVER. PLEASE READ THIS AGREEMENT CAREFULLY.

*Id.*, Ex. A, at 1.[1] And, at all relevant times, the table of contents of SHEIN's Terms identified a conspicuous section entitled "**LEGAL DISPUTES AND ARBITRATION AGREEMENT FOR USERS IN THE UNITED STATES**" as one of its enumerated paragraphs. *See id.*, Ex. A, at 1-2 (listing § 13). This Arbitration Agreement and class action waiver were also expressly incorporated in all bold, capitalized font into the "**TEXT MESSAGING PROGRAM**" terms included in paragraph 9 of SHEIN's Terms:

> **GENERAL TERMS & DISPUTES. WITHOUT LIMITATION OUR TEXT MESSAGING PROGRAM IS SUBJECT TO *THESE COMPLETE TERMS*, WHICH *CONTAIN PROVISIONS* THAT GOVERN HOW CLAIMS YOU AND WE HAVE AGAINST EACH OTHER ARE RESOLVED (SEE LEGAL DISPUTES AND ARBITRATION AGREEMENT SECTION BELOW), *INCLUDING AN OBLIGATION TO ARBITRATE DISPUTES*, WHICH WILL, SUBJECT TO LIMITED EXCEPTIONS, REQUIRE YOU TO SUBMIT CLAIMS YOU HAVE AGAINST US, INCLUDING WITHOUT LIMITATION, ANY CLAIMS RELATING TO TEXT MESSAGES YOU**

---

[1] The screen capture above was in effect and has not changed from the time Ms. Ramirez made a purchase in January 2024 or Ms. Pita made a purchase in April 2024 through the date this lawsuit was filed. *Compare* Chi Decl., Ex. A at p.1 [ECF No. 18-1 at 9], *with* Chi Decl. Ex. D at p. 1 [ECF No. 18-1 at 50].

3

**RECEIVE FROM US, TO BINDING ARBITRATION, UNLESS YOU OPT-OUT IN ACCORDANCE WITH THE *ARBITRATION SECTION* BELOW.**

*Id.* ¶ 9 [ECF No. 18-1 at 24] (italics added).

As the above excerpts demonstrate, the obligation to arbitrate disputes on an individual basis is a provision *within* SHEIN's Terms. It is one of those Terms and is fully contained within them. "[I]t is without question that . . . a clause within the very contract being interpreted cannot, by definition, be a collateral agreement." *Adacel, Inc. v. Adsync Techs., Inc.*, No. 6:18-cv-1176-ORL-78EJK, 2020 WL 10056046, at *4 (M.D. Fla. July 13, 2020) (citing *Contract*, Black's Law Dictionary (11th ed. 2019) (defining "collateral contract" as "an agreement made before or at the same time as, but separately from, another contract")). Thus, the Arbitration Agreement is not a "stand-alone" or collateral document, as Plaintiffs contend. (Opp. at 5.) And, by clicking on the "ACCEPT" button when they signed in—as well as the "CONTINUE" button when they checked out—Plaintiffs accepted all of SHEIN's Terms, *including* the agreement to arbitrate claims on an individual basis.

Plaintiffs rely primarily on the Report and Recommendation in *Goldstein v. Fandango Media, LLC*, No. 9:21-cv-80466-RAR, 2021 WL 6617447, at *4 (S.D. Fla. July 27, 2021), which was never adopted by the District Court,[2] to support their "collateral document" argument. Numerous courts have distinguished *Goldstein*, however, and declined to adopt its rationale where, as here, "the arbitration clause in the . . . Terms of Use is not an incorporated collateral agreement[,] it is a specific enumerated term within the . . . [a]greement." *Adams v. Lashify, Inc.*, 689 F. Supp. 3d 1146, 1155 (M.D. Fla. 2023) (finding that *Goldstein* "is inapposite because the arbitration

---

[2] The *Goldstein* defendant filed objections to the Report and Recommendation, which had not yet been ruled upon by the District Court when Plaintiffs voluntarily dismissed the case. Case No. 21-cv-80466, ECF Nos. 44-47.

clause in the Internet Agreement's Terms of Use is not an incorporated collateral agreement; it is a specific enumerated term within the Internet Agreement"); *see also Derriman v. Mizzen & Main LLC*, No. 8:23-CV-1132-CEH-UAM, 2023 WL 9022723, at *7 n.3 (M.D. Fla. Dec. 29, 2023) (explaining that *Goldstein* is "a factually distinguishable case in which the arbitration agreement was a collateral document not specifically incorporated into the relevant terms and conditions"); *Falcon v. TelevisaUnivision Digital, Inc.*, No. 8:23-cv-02340-TPB-UAM, 2024 WL 1492831, at *4 (M.D. Fla. Mar. 29, 2024) (finding that *Goldstein* does not apply to the "Agreement to Arbitrate"[3] within the Terms of Use agreement because the clause "is a specific enumerated term within the . . . agreement").

In *Goldstein*, the Magistrate Judge concluded that Fandango's Arbitration Agreement was a "collateral document" without explaining the basis for that finding (and apparently without briefing on the issue).[4] The presentation of SHEIN's Terms and the inclusion of the arbitration provisions within the Terms is distinguishable from those at issue in *Goldstein*. SHEIN's Terms

---

[3] To the extent Plaintiffs contend that the arbitration provisions within SHEIN's Terms are a collateral agreement because the Terms refer to an "Agreement to Arbitrate" or "Arbitration Agreement" (*see* Opp. at 5), *Falcon* makes clear that simply labeling an "agreement" to arbitrate as such within enumerated terms does not somehow convert the arbitration agreement into a collateral document.

[4] The *Goldstein* court refers to the arbitration agreement as a "collateral document." 2021 WL 6617447, at *4. By contrast, in the Florida case on which *Goldstein* relied, the court discussed the terms and condition of sale (which contained an arbitration clause) as the collateral document at issue. *Vitacost.com, Inc. v. McCants*, 210 So. 2d 761, 765 (Fla. 2017). *Vitacost.com* held that hyperlinks to a seller's terms and conditions were not disclosed conspicuously enough to put the plaintiff on inquiry notice that the terms and conditions applied to the sale (including because the checkout page "contain[ed] no statement that the sale was subject to those 'terms and conditions'"). Here, Plaintiffs do not, and cannot, assert that the hyperlinks to SHEIN's Terms were inconspicuous. Nothing in *Vitacost.com* suggests that the hyperlinks must specifically reference arbitration, as Plaintiffs argue here. *See Raw Life Organics LLC v. SBL, LLC*, No. 20-cv-61944, 2021 WL 217765, at *6 (S.D. Fla. Jan. 6, 2021), *report and recommendation adopted,* 2021 WL 217076 (S.D. Fla. Jan. 21, 2021) (distinguishing *Vitacost.com* and enforcing arbitration provision contained in hyperlinked "terms and conditions").

are hyperlinked from the sign-in and checkout screen and consist of a single document with multiple numbered paragraphs including the Arbitration Agreement, which is disclosed to users in bold and all capitals in the opening paragraphs and detailed in paragraph 13. ECF No. 18-1 ¶ 13. Unlike SHEIN's Terms, Fandango's website hyperlinked to a page containing nine separate "Terms and Policies" (none of which mentioned arbitration in the title). Fandango's "Notice of Arbitration Provisions" appeared below this list of enumerated "Terms and Policies," and each of those Terms and Policies was made "subject to" arbitration:

The Fandango Terms and Policies consist of:

**Privacy Policy**
**Terms of Use**
**Ticket Policy**
**Cookies and Tracking Technologies Information Center**
**Mobile Apps Information Center**
**FandangoNOW Policy**
**Promo Code Policy**
**Gift Card Terms**
**VIP+ Program Terms**

NOTICE OF ARBITRATION PROVISIONS:

All the above Terms and Policies and your use of the Services are subject to binding individual arbitration of any disputes which may arise. Please read the arbitration provisions carefully and do not use the Services if you are unwilling to arbitrate any disputes you may have with us as provided below.

Case No. 9:21-cv-80466-RAR, ECF No. 17-4 at 2. For the same reasons discussed in the numerous cases that have distinguished it, *Goldstein* is factually inapposite.

The only other case Plaintiffs cite to support the "collateral agreement" argument, *Johnson v. Whaleco, Inc.*, No: 5:23-cv-403-GAP-PRL, 2023 U.S. Dist. LEXIS 184104, at *9-10 (M.D. Fla. Oct. 13, 2023), is similarly inapplicable. In *Johnson*, the court found the hyperlinks to the Terms were inconspicuous, primarily due to the use of light grey font—an argument Plaintiffs do not make here. Nor could they, as the hyperlinks to SHEIN's Terms were set apart in blue font in every iteration included in the Motion to Compel. The *Johnson* court also followed *Goldstein* on

the "collateral agreement" point without explaining why the arbitration agreement was considered a collateral agreement (an issue that apparently was not addressed in the parties' briefs in *Johnson*, either).  2023 U.S. Dist. LEXIS 184104, at *9.

Here, the Arbitration Agreement is part of SHEIN's Terms—not a collateral document.  The Terms were conspicuously disclosed, and Plaintiffs accepted them; they do not argue otherwise.  Therefore, Plaintiffs should be ordered to arbitrate, as they clearly agreed to do.

## II. No Authority Requires the Hyperlink to the Terms to Reference Arbitration.

Plaintiffs cite no authority standing for the proposition that an arbitration agreement contained within a website's terms and conditions must be specifically referenced in a hyperlink at checkout or on a sign-in page.  Their reliance on *Bell v. Royal Seas Cruises, Inc.* is unavailing.  No. 19-CV-60752-RAR, 2020 WL 5742189, at *4 (S.D. Fla. May 13, 2020), *report and recommendation adopted*, 2020 WL 5639947 (S.D. Fla. Sept. 21, 2020).  Although the court in *Bell* found that "[a] reasonable user confronting a sentence 'I understand and agree to email marketing, the Terms & Conditions which includes mandatory arbitration, and Privacy Policy' would understand that he or she is assenting to the linked terms and, significantly, that those terms 'include[ ] mandatory arbitration,'" it did not ***require*** that such reference to arbitration be present for inquiry notice.  *Id.*

Courts in this Circuit routinely find hyperlinked terms of service placed in close proximity to a button that a party must click in order to proceed binding even where the arbitration provision itself is not described, and the Court should do so here.  *See, e.g., Kravets v. Anthropologie, Inc.*, No. 22-CV-60443, 2022 WL 1978712, at *6 (S.D. Fla. June 6, 2022) ("[W]hile the Arbitration Provision itself was not described in the button, the Court finds that the language in the button referencing the Text Program, statements immediately above the button describing the Text

7

Program, the hyperlink to the Arbitration Provision immediately above the button, and Plaintiff's affirmative text to opt-in to the Text Program, are sufficient to give Plaintiff notice of the legal significance of her actions and establish that Plaintiff manifestly assented to the Text Terms and the Arbitration Provision."); *Derriman*, 2023 WL 9022723, at *8 ("[A]lthough the arbitration clause was not described on or above the button, the language immediately above the button, the hyperlink to the Messaging Terms, and Plaintiff's affirmative opt-in text gave Plaintiff sufficient notice of the legal significance of his actions."); *Adams*, 689 F. Supp. 3d at 1156 (finding that "Plaintiff is subject to the valid, written Internet Agreement and its associated arbitration clause" where the hyperlinked text above the "CHECKOUT" button read "Upon placing an order you agree to Lashify's Terms of Use, shipping & return policy.  We are unable to make edits or add coupons once order is placed").

Indeed, any rule that would require an arbitration provision in a contract to be singled out in the manner Plaintiffs suggest (unlike any other provision in the Terms) would violate the FAA's requirement that arbitration agreements be placed on "equal footing" with other contracts, including with respect to formation issues.  *See Kindred Nursing Ctrs. LP v. Clark*, 581 U.S. 246, 251, 254-255 (2017) ("A rule selectively finding arbitration contracts invalid because improperly formed fares no better under the [Federal Arbitration] Act than a rule selectively refusing to enforce those agreements once properly made."); *see id.* at 251 (citing *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) ("A court may invalidate an arbitration agreement based on 'generally applicable contract defenses' like fraud or unconscionability, but not on legal rules that 'apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue.'")).  Yet here, Plaintiffs invite the same error that the United States Supreme Court has admonished time and again.  Quite simply, there is no special rule requiring arbitration

provisions to be treated differently than other provisions in a contract, and it is reversible error to hold that an arbitration provision in the Terms must be singled out and highlighted, while non-arbitration provisions do not.  Accordingly, the Court should hold Plaintiffs to their agreement and enforce the Arbitration Agreement according to its terms.

## CONCLUSION

For the foregoing reasons, the Court should order Plaintiffs to arbitrate their claims on an individual basis and stay this case during the pendency of the arbitration.

Dated: August 8, 2024

/s/ *Jamie Zysk Isani*
**HUNTON ANDREWS KURTH LLP**
Jamie Zysk Isani (FBN 728861)
Samuel A. Danon (FBN 892671)
Natalia C. San Juan (FBN 1011430)
333 S.E. 2nd Avenue, Suite 2400
Miami, FL 33131
Telephone: (305) 810-2500
Facsimile: (305) 810-2460
jisani@HuntonAK.com
sdanon@HuntonAK.com
nsanjuan@HuntonAK.com

*Counsel for Defendant SHEIN US SERVICES, LLC*