UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-22002-CIV-ALTONAGA/Reid

AMANDA RAMIREZ, *et al.*,

    Plaintiffs,
v.

SHEIN US SERVICES, LLC,

    Defendant.
_____/

## ORDER

**THIS CAUSE** came before the Court on Defendant, Shein US Services, LLC's Motion to Compel Arbitration and to Stay Case in Favor of Arbitration [ECF No. 18], filed on July 19, 2024. Plaintiffs, Amanda Ramirez and Hanna Pita, filed a Response [ECF No. 19]; to which Defendant filed a Reply [ECF No. 20]. The Court has carefully considered the parties' written submissions, the record, and applicable law. For the following reasons, the Motion is granted.

## I. BACKGROUND

Plaintiffs filed this class action lawsuit against Defendant under the Telephone Consumer Protection Act, 47 U.S.C. section 227, *et seq.*, and the Florida Telephone Solicitation Act, Fla. Stat. section 501.059. (*See* First Am. Compl. ("FAC") [ECF No. 16] ¶ 1). Plaintiffs allege "Defendant engages in unsolicited text messaging and continues to text message consumers after they have opted out of Defendant's solicitations[,]" in violation of these statutes. (*Id.* ¶ 2 (alteration added)). Plaintiffs assert Defendant's marketing text messages instruct consumers to "Reply STOP to stop[,]" but when consumers do so, Defendant continues to send text messages. (*Id.* ¶ 9

(alteration added; quoting screenshot); *see also id.* ¶¶ 10–14).[1] At issue is whether this dispute should be tried here or decided by an arbitrator.

Defendant's consumers are required to sign an agreement to arbitrate and a class action waiver. The parties dispute whether consumers have adequate notice of the arbitration agreement. (*See* Mot. 3–9; Resp. 4–9).[2] To complete a purchase on Defendant's webpage, the consumer must click the "CONTINUE" button as shown:

[screenshot of SHEIN Order Confirmation page showing Retail Price $24.90, Promotions -$8.21, Subtotal (2 items) $16.69, Shipping fee FREE $3.99, Sales Tax $1.00, Saved $12.20, Order Total $17.69, reward 16 SHEIN points, Payment Security section, Security & Privacy section, "By placing this order you agree to SHEIN's Terms and Conditions and Privacy Policy," FREE SHIPPING, and CONTINUE button]

---

[1] For example, Plaintiffs allege Defendant ignored Ramirez's April 21, 2024 "STOP" request and continued text messaging her, sending her messages on April 28, 2024; May 5, 2024; and May 12, 2024. (FAC ¶¶ 10–11). Similarly, Pita made her first "STOP" request on April 29, 2024, but Defendant continued to text message her on May 2, 2024; May 4, 2024; May 5, 2024; May 6, 2024; May 8, 2024; May 11, 2024; May 12, 2024; May 14, 2024; and May 16, 2024. (*Id.* ¶¶ 12–13).

[2] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

(Mot., Ex. 1, Chi Decl. [ECF No. 18-1] ¶ 7). Directly above the "CONTINUE" button, the consumer is informed "[b]y placing th[e] order[,] [the consumer] agree[s] to [Defendant's] Terms and Conditions[.]" (*Id.* (alterations added)). The phrase "Terms and Conditions" appears in blue font and is hyperlinked to the full Agreement. (*See id.* ¶ 8). Section 13 of the Terms and Conditions is titled "Legal Disputes and Arbitration Agreement . . ." and includes an arbitration agreement, jury trial waiver, and class action waiver. (*Id.* 28–33 (alteration added)).

Defendant moves to compel arbitration and stay the case. (*See generally* Mot.; Reply). Defendant insists Plaintiffs agreed to Defendant's online Terms and Conditions in their Agreements, which require complainants to arbitrate claims on an individual basis. (*See generally* Mot.; Reply; Chi. Decl. 28–29). Plaintiffs insist the contents of Section 13 are collateral to the Terms and Conditions, and thus Defendant was required — and failed to — provide specific notice of the terms of Section 13. (*See generally* Resp.).

## II. LEGAL STANDARD

"District courts consider three factors in reviewing a motion to compel arbitration: (1) [w]hether there is a valid written agreement to arbitrate; (2) [w]hether there is an arbitrable issue; and (3) [w]hether the right to arbitrate has been waived." *Dimattina Holdings, LLC v. Steri-Clean, Inc.*, 195 F. Supp. 3d 1285, 1288 (S.D. Fla. 2016) (alterations added; quotation marks and citation omitted). Plaintiffs do not contest whether their claims are arbitrable or assert the right to arbitrate has been waived; rather, Plaintiffs deny they had notice of their arbitration agreements, rendering the agreements invalid. (*See generally* Resp.). Consequently, resolution of the Motion turns on the first factor.

The Federal Arbitration Act (the "FAA"), 9 U.S.C. section 1, *et seq.*, makes written arbitration agreements "valid, irrevocable, and enforceable, save upon such grounds as exist at law

3

or in equity for the revocation of any contract[.]" *Id.* at § 2 (alteration added).  "The FAA was enacted in 1925 in response to widespread judicial hostility to arbitration agreements[,]" and it "reflect[s] both a 'liberal federal policy favoring arbitration,' and the 'fundamental principle that arbitration is a matter of contract[.]'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (alterations added; citations omitted).  This means "courts must place arbitration agreements on equal footing with other contracts, . . . and enforce them according to their terms[.]" *Id.* (alterations added; citations omitted).  But it also means such agreements may be "invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability[.]'" *Id.* (alteration added; quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996); other citation omitted).

"Although the FAA governs the applicability of arbitration agreements, state law governs issues 'concerning the validity, revocability, and enforceability of contracts generally.'" *Bhim v. Rent-A-Center, Inc.*, 655 F. Supp. 2d 1307, 1311 (S.D. Fla. 2009) (quoting *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987)); *see also Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005) ("[S]tate law generally governs whether an enforceable contract or agreement to arbitrate exists." (alteration added; citation omitted)).  Defenses such as fraud, unconscionability, and duress are governed by state law.  *See Bhim*, 655 F. Supp. 2d at 1311.

In this case, Plaintiffs' claims arose in Florida and North Carolina, but beyond a few passing references in their briefs, the parties apply Florida law only.[3]  The parties do not indicate application of North Carolina law would result in a different outcome.  (*See generally* Mot.; Resp.; Reply).  Based on this briefing, the Court considers only Florida law.  *See MidAmerica C2L Inc.*

---

[3] Plaintiffs assert that North Carolina applies to Pita's claims, but they only cite Florida law.  (*See generally* Resp.).  Other than some citations in the Motion, Defendant also only briefs Florida law.  (*See generally* Mot.; Reply).

4

*v. Siemens Energy Inc.*, No. 20-11266-Civ, 2023 WL 2733512, at *10 (11th Cir. Mar. 31, 2023) ("Choice of law is not jurisdictional" and is therefore waivable. (citations omitted)); *see also Hewlett-Packard Co. v. CP Transp. LLC*, No. 12-21258-Civ, 2012 WL 4795766, at *2 (S.D. Fla. Oct. 9, 2012) ("The onus is upon the parties to formulate arguments." (alteration adopted; quotation marks and footnote call number omitted; quoting *Resol. Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995); other citation omitted)).

"The party opposing a motion to compel arbitration . . . 'has the affirmative duty of coming forward by way of affidavit or allegation of fact to show cause why the court should not compel arbitration.'" *Sims v. Clarendon Nat'l Ins. Co.*, 336 F. Supp. 2d 1311, 1314 (S.D. Fla. 2004) (alteration added; citation omitted). "This burden is not unlike that of a party seeking summary judgment." *Id.* (quotation marks and citation omitted). "Therefore, the party opposing arbitration should identify those portions of the pleadings, depositions, answers to interrogatories, and affidavits which support its contention." *Id.* (alterations adopted; quotation marks and citations omitted).

### III.  ANALYSIS

The parties agree the Agreement's Terms and Conditions include an agreement to arbitrate and class action waiver. (*See generally* Mot.; Resp.). Plaintiffs argue, however, that Defendant failed to give proper notice of the arbitration agreements, rendering those agreements unenforceable.

Plaintiffs argue the agreement to arbitrate and class action waiver are "collateral document[s]" to the Agreements' Terms and Conditions or a "collateral agreement" because the user must click on the hyperlinked Terms and Conditions to reach the agreement. (Resp. 5 (alteration added)). Plaintiffs point to *Goldstein v. Fandango Media, LLC*, No. 21-cv-80466, 2021

5

WL 6617447 (S.D. Fla. July 27, 2021), where the court denied a motion to compel arbitration based on "collateral arbitration agreements" not "incorporat[ed]" within the online terms and conditions. (Resp. 5 (alteration added); *see also id.* 5–7). In *Goldstein*, the court found an arbitration agreement was collateral to the defendant's online terms and conditions and thus had to be properly "incorporated" into the terms and conditions. *Goldstein*, 2021 WL 6617447, at *4 (citation omitted); (*see also* Resp. 6). There, the court held the defendant did not properly incorporate the agreement because the notice of the terms and conditions failed to "sufficiently describe it so that the user is on notice of the mandatory arbitration provision[.]" *Goldstein*, 2021 WL 6617447, at *4 (alteration added). Plaintiffs argue *Goldstein* requires Defendant to include a notice of the arbitration agreement on the same webpage as the "CONTINUE" to sale button. (*See* Resp. 5–6).

According to Defendant, "the arbitration clause in the Terms [and Conditions] is not an incorporated collateral agreement," but rather "a specific enumerated term within the [A]greement." (Reply 4–5 (alteration adopted; other alterations added; quotation marks omitted; quoting *Adams v. Lashify, Inc.*, 689 F. Supp. 3d 1146, 1155 n.6 (M.D. Fla. 2023); other citations omitted)). The Court agrees. Defendant cites several cases where courts have found arbitration agreements contained within a website's terms of use are not incorporated collateral agreements, even where the notice of the terms of use makes no mention of an arbitration agreement.[4] (*See id.* (citing *Adams*, 689 F. Supp. 3d at 1155 n.6; *Derriman v. Mizzen & Main LLC*, --- F. Supp. 3d ---,

---

[4] For this reason, Plaintiffs' reliance on *Bell v. Royal Seas Cruises, Inc.*, No. 19-cv-60752, 2020 WL 5742189 (S.D. Fla. May 13, 2020), is also unavailing. (*See* Resp. 7–8). While it is certainly sufficient to explicitly state the terms and conditions include mandatory arbitration, as was the case in *Bell*, it is not required. Further, in *Bell*, "a genuine dispute of material fact exist[ed] with respect to whether [p]laintiff . . . visited the Website, and clicked 'Continue,' on the date and time in question." *Id.* at *8 (alterations added). No such dispute exists here.

No. 23-cv-1132, 2023 WL 9022723, at *7 n.3 (M.D. Fla. Dec. 29, 2023); *Falcon v. TelevisaUnivision Digital, Inc.*, No. 23-cv-02340, 2024 WL 1492831, at *4 (M.D. Fla. Mar. 29, 2024))); *see also Kravets v. Anthropologie, Inc.*, No. 22-cv-60443, 2022 WL 1978712, at *4–6 (S.D. Fla. June 6, 2022) (enforcing an arbitration agreement where the browsewrap[5] link to the website's terms did not reference the arbitration agreement).  Indeed, the agreements to arbitrate here are included as an enumerated term within the Terms and Conditions rather than separate stand-alone documents; the agreements are listed in Section 13 in the Agreements' Terms and Conditions' table of contents.  (*See* Chi Decl. 9–10, 28–33).

Plaintiffs attempt to distinguish this case by arguing their arbitration agreements with Defendant were separate collateral agreements rather than arbitration clauses of the Agreements. (*See* Resp. 8–9).  Fatal to Plaintiffs' argument, they provide no explanation or authority supporting the conclusory assertion that their embedded arbitration agreements were separate collateral agreements as opposed to arbitration clauses.  (*See generally* Resp.).  Because Plaintiffs do not explain how their arbitration agreements with Defendant are collateral to their Agreements' Terms and Conditions — of which the arbitration agreements are an enumerated section — Plaintiffs fail to persuade that *Goldstein* applies. *Compare Goldstein*, 2021 WL 6617447, at *4, *with BGT Grp., Inc. v. Tradewinds Engine Servs., LLC*, 62 So. 3d 1192, 1194–95 (Fla. 4th DCA 2011) (finding the terms and conditions of a contract were a collateral document where the contract referenced terms and conditions but did not attach them).

Plaintiffs also argue the court in *Johnson v. Whaleco, Inc.*, "denied a motion to compel arbitration for failure to describe and incorporate the arbitration provision within the online form."

---

[5] A browsewrap agreement, like Defendant's Terms and Conditions, "occurs when a website merely provides a link to the terms and conditions and does not require the purchaser to click an acknowledgement during the checkout process." *Bell*, 2020 WL 5742189, at *5 (quotation marks and citation omitted).

(Resp. 7 (citing (*Johnson*, 23-cv-403, Oct. 13, 2023 Order [ECF No. 29] filed on October 13, 2023 (M.D. Fla. 2024))))). Defendant disputes Plaintiffs' characterization of the case, arguing *Johnson* turned on the conspicuousness of the hyperlinks to the terms and conditions. (*See* Reply 6–7). The Court agrees with Defendant.

In *Johnson*, the court found "the faint text linking to Defendant's browsewrap agreement [wa]s located at the bottom of the webpage . . . far below the bright-orange 'Continue' button." (*Johnson*, 23-cv-403, Oct. 13, 2024 Order 9–10 (alterations added; citation omitted)). The court denied the motion to compel arbitration because Florida courts only enforce browsewrap agreements where "the purchaser has actual knowledge of the terms and conditions, or when the hyperlink to the terms and conditions is conspicuous enough to put a reasonably prudent person on inquiry notice." (*Id.* 6 (citing *MetroPCS Commc'ns, Inc. v. Porter*, 273 So. 3d 1025, 1028 (Fla 3d DCA 2018))). Here, the hyperlinks, set apart in blue font directly above the "CONTINUE" button, are "conspicuous enough to put a reasonably prudent person on inquiry notice" and are therefore enforceable. *MetroPCS Commc'ns, Inc.*, 273 So. 3d at 1029 (quotation marks and citation omitted); (*see also* Reply 5–7).

In sum, Plaintiffs are unable to meet their burden to show their arbitration agreements are unenforceable, and, consequently, the case must proceed to arbitration. *See Sims*, 336 F. Supp. 2d at 1314.

### IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that the Motion **[ECF No. 18]** is **GRANTED** as follows:

1. Arbitration of Ramirez and Pita's claims is compelled in accordance with the parties' arbitration agreements and the FAA.

2. This case is **STAYED** pending arbitration.

3. The Clerk is directed to administratively **CLOSE** the case.

**DONE AND ORDERED** in Miami, Florida, this 17th day of August, 2024.

_____
**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc: counsel of record